UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MIGUEL RIVERA,                                          :

     Petitioner,                          :    07 Civ.  3577 (RMB) (AJP)

   -against-                                      :    **REPORT AND RECOMMENDATION**

ROBERT ERCOLE, Superintendent,             :
Green Haven Correctional Facility,
             :
     Respondent.
             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Richard M. Berman, United States District Judge:**

      Pro se petitioner Miguel Rivera seeks a writ of habeas corpus from his January 29, 2003 conviction, after a jury trial in Supreme Court, Bronx County, of second degree depraved indifference murder and sentence of twenty four and one-half years to life imprisonment.  (Dkt. No. 1: Pet. ¶¶ 1-5.)  Rivera's habeas corpus petition asserts that:  (1) "[t]he evidence at trial was legally insufficient to support [Rivera's] conviction of the crime of depraved indifference murder" (Pet. ¶ 13, incorporating Rivera 1st Dep't Br. at 17-21); (2) Rivera "was deprived of the effective assistance of counsel because of trial counsel's failure to preserve by specific objection the legal insufficiency claim for the crime of depraved indifference murder" (id. at 21-23); (3) "the cumulative effect of improper statements by the prosecutor in her opening statement and summation, deprived [Rivera] of his constitutional right to a fair trial" (id. at 24-30); and (4) "the lower court inadequately rejected

2

[that] the new section propos[ed] [by] the Advisory Committee [that] cover[s] paragraph[s] (B) and (C) of subdivision two of Section 440.10 of the Criminal Procedural Law [should] be amended to provide that ineffective assistance of counsel claims be exempt from procedural bar to collateral review" (Pet. ¶ 13).

     For the reasons set forth below, Rivera's habeas petition should be <u>DENIED</u>.

<u>**FACTS**</u>

     Miguel Rivera's conviction arose from the April 21, 2001 shooting and resulting death of Dwight Milan. (Prosecution Opening: Trial Transcript ["Tr."] 13-17.)

**The Prosecution Case at Trial**

     In her opening statement, A.D.A. Theresa Gottlieb stated that the jury would hear evidence that after the shooting, Rivera called the bodega and was told "'[d]on't come around. Don't call. The place is swarming with police.'" (Prosecution Opening: Tr. 16.) There were no objections during the prosecution's opening statement. (Tr. 13-17.)

     On April 21, 2001 at approximately 2:30 p.m., Dwight Milan rode his motorcycle in the Bronx from 1132 Forest Avenue toward 166th Street. (Charlett Milan: Tr. 21-23.) He did not own a gun and was unarmed. (Charlett Milan: Tr. 32.) Milan was wearing "black jeans because he was wearing his riding clothes. . . . a black T-shirt, a black leather vest, some boots, a bandanna and his helm[e]t." (Charlett Milan: Tr. 28.) Milan was about 6' 2" tall and weighed 275 pounds; his wife described him as a "big guy." (Charlett Milan: Tr. 33.)

Robert Quinones was selling marijuana across the street from the bodega on Tinton

Avenue, close to the corner of 166th Street. (Quinones: Tr. 141-42, 156-57.) Quinones saw Milan

enter the bodega, heard "like two shots" from inside the store, and saw Milan run out of the store

followed by Rivera, who Quinones knew. (Quinones: Tr. 141-45, 156-57, 173, 178.) Rivera walked

out of the bodega with a gun in his hand and shot Milan "like twice" while chasing him. (Quinones:

Tr. 142-45, 150, 178.) Following the shooting, Milan ran up 166th Street and Rivera calmly walked

past Quinones while crossing Tinton Avenue. (Quinones: Tr.145-49.)

At the time of the shooting, retired Police Officer Charles Hoskins was parked on

166th Street facing Tinton Avenue. (Hoskins: Tr. 36-37, 53.) Officer Hoskins heard shots fired and

saw a man, later identified as Milan, run past his car and say to someone else, "[H]ey, man, what you

doing here?" (Hoskins: Tr. 37-38, 46-47, 52-53, 60; Charlett Milan: Tr. 23-26; Gonzales: Tr. 306-

07.) Officer Hoskins ran to the bodega and asked for a description of the shooter, but no one

answered because they seemed frightened. (Hoskins: Tr. 38, 54, 58-59.) Officer Hoskins ran back

to his car and "looked down 166th Street and . . . saw [Milan] laying on the ground," before Forest

Avenue, with his eyes open and breathing, but Milan did not respond when Officer Hoskins asked

who shot him. (Hoskins: Tr. 38-39, 45-46, 60.) Milan was wearing a leather jacket or vest and did

not have a weapon. (Hoskins: Tr. 39, 47, 52.) Hoskins checked Milan's wounds and yelled for

someone to call the police. (Hoskins: Tr. 39, 59.)

When Police Officer Matilda Cofield arrived at the scene, she found a black male,

breathing but unconscious, lying on the sidewalk. (Cofield: Tr. 66-69, 124-25.) Officer Cofield

called an ambulance and established a crime scene.  (Cofield: Tr. 67-69, 115, 125-26.)  She asked bystanders if they had seen anything, "but no one cooperated."  (Cofield: Tr. 69, 125.)  The police recovered five discharged shells and various bullet fragments inside the bodega and one discharged shell outside the bodega.  (Cofield: Tr. 89-90, 93, 97-106, 111, 127-30.)  Officer Cofield saw three bullet holes in different areas of the bodega.  (Cofield: Tr. 69, 82-83, 89-91, 97-106.)  Det. Ralph Gonzales stated that "there were two employees, the owner and another gentleman, and . . . other people working" in the bodega at the time of the shooting, and that he saw bullet holes in the refrigerator.  (Gonzales: Tr. 304-06, 312.)

Dwight Milan died while in surgery at the hospital.  (Charlett Milan: Tr. 25-26.)

After the shooting, Rivera arrived at his friend Miguel Lopez's apartment, "shaking," and asking to speak to Lopez privately.  (Lopez: Tr. 191-94, 213-14.)  Lopez's apartment was a block away from the bodega.  (Lopez: Tr. 212-13.)  Lopez testified that Rivera told him:

"Look, Mick, I did something stupid.  I was hanging out, 166th and Tinton in the store, and, uhm, a guy dressed as a biker guy, a big guy, went in there."  He was looking – I guess he was looking tough; like he was looking, I guess, for a problem.  "He went in there asking, 'who's the murderess [sic]?  Who's the murderess?'"

So at the time, Mike – Miguel Rivera got up and said, "I'm a murderer.  I'm a murderer."  And at that time, the biker guy, he turned around like he had something in his waist, something like that; and at that time, that's when Miguel told me that he took out the weapon and started shooting at the person; and the person ran out the store and Mike ran out the store, too.

(Lopez: Tr. 192-93, 195-96; see also Lopez: Tr. 213.)  Rivera asked Lopez to "put the weapon away" and give him a change of clothing; Lopez hid the gun in a drawer and gave Rivera a shirt.  (Lopez: Tr. 196-97, 206-09.)  Rivera called the bodega and told Lopez that he was told to stay away from the

bodega "because there w[ere] a lot of cops around." (Lopez: Tr. 197-98.) Rivera washed his hands to remove any gunpowder residue and left in a car service. (Lopez: Tr. 198-99.)

Later that afternoon, Lopez brought Rivera's gun to the building's lobby "inten[ding] to scare the people" his girlfriend was arguing with. (Lopez. Tr. 199-200, 220-26.) The police arrested Lopez. (Lopez: Tr. 200-01.) Lopez told them Rivera had given him the gun, and Lopez told the police where the gun was located, gave them the keys to his apartment and permission to retrieve the gun and Rivera's shirt. (Lopez: Tr. 203-04, 207-09, 227-28, 237-39; Brusack: Tr. 277-80.) Ballistics testing proved that that was the gun that shot Milan. (Barry: Tr. 420.)

The prosecution rested. (Tr. 434.) Defense counsel did not move to dismiss. (See Tr. 434-41.)

## The Defense Case At Trial

On the afternoon of April 21, 2001, Vernon Bray was working at the deli counter in the bodega on Tinton Avenue and 166th Street. (Bray: Tr. 649-50.) Bray's coworkers, Jose and Nelson, the store's owner named Alberto, and a girl that Bray served were in the store at the time of the shooting. (Bray: Tr. 650, 658-59, 664.) Bray heard gunshots but did not see the person shooting or hear anybody argue or say "'where are the murderers at?'" or "' . . . I'm the murderer.'" (Bray: Tr. 655-57.) Referring to Rivera, Bray said, "I seen him in the neighborhood. He would come in, usually order sandwiches and stuff from me and stuff, and talk for a minute or so." (Bray: Tr. 657.) Bray stated that he did not see Rivera either before or after the shooting, and that he knew Rivera

was not in the store and could not be the shooter "because it's not like him not to say hello." (Bray: Tr. 657-58, 665-69.) Bray also never saw Milan in the store. (Bray: Tr. 668-69, 673.)

Joshua Garcia went to the bodega with his friend Johnny to buy a drink. (Garcia: Tr. 693.) Garcia testified that he was standing by the counter ready to pay and Johnny was getting the sodas when a man, later identified as Dwight Milan, wearing a leather coat, boots and a black and white shirt, entered the bodega. (Garcia: Tr. 693.) When Garcia began paying, a man who had a "fade" haircut and was wearing a blue and white shirt entered the bodega. (Garcia: Tr. 694-95, 704-05.) Garcia testified that the man with the "fade" haircut was not Miguel Rivera, who Garcia knew having played handball with Rivera. (Garcia: Tr. 697, 710-11, 714.) The man with the "fade" haircut walked to the back of the store, and Garcia heard two gunshots. (Garcia: Tr. 695, 710.) Garcia saw the man with the leather coat and boots lying on the floor and the man with the "fade" haircut pointing a gun over him. (Garcia: Tr. 695, 697-98, 702, 705-06, 710, 717-19.) Garcia and Johnny ran out of the store followed by the man with the "fade" haircut. (Garcia: Tr. 695-96, 710, 717.)

The defense rested. (Tr. 755.)

**Defense Motion for Dismissal**

Following the defense case, Rivera's attorney Edward Dudley moved for a trial order of dismissal, stating:

> Your Honor, at the end of the People's case, I ask permission that I be allowed to reserve my motions, even though I may have forgotten.

And at the end of the entire case, I would move to dismiss all of the charges against the defendant.  On the grounds that the People have not proven his guilt beyond a reasonable doubt, I'd ask for a trial order of dismissal and on the further grounds that the proof at the hearing and at the trial showed a conspiracy to cover up a – a promise to Mr. Miguel Lopez for his grand jury testimony.

(Tr. 773-73a.)  Justice Bamberger denied the motion.  (Tr. 774.)

## The Prosecution's Summation

At the beginning of Assistant District Attorney Gottlieb's summation, the following colloquy occurred:

[A.D.A.] GOTTLIEB:  . . . Before I begin with talking about the issues, ladies and gentlemen, I'd like to do a couple of things and, that is, I'd like to show you what you no longer have to consider, and the reason that you no longer have to consider these things is because they have been conceded by the defense.

The first thing that's been conceded is that Dwight Milan was killed on April 21, the year 2001; the cause of death of Dwight Milan was gunshot wounds, six, for a total –

THE COURT:  Miss Gottlieb, I think they [the jury] do have to consider these issues.  They're part of the case.  All right?  So please work on that premise.

[A.D.A.] GOTTLIEB:  Mr. Dudley [defense counsel] concedes that this is, in fact, the murder weapon; that that this gun has been connected to all of the dispensed, discharged shells that were found at the murder scene; that this gun is, in fact, the murder weapon; that was the gun used on April 21 to kill Dwight Milan; that the murder took place inside and outside 1105 Tinton Avenue.  That's where the murder scene was.

(Prosecution Summation: Tr. 851-52.)  A.D.A. Gottlieb continued that what the jury needed to decide is "who shot Dwight Milan six times"?  (Prosecution Summation: Tr. 852.)

When discussing Quinones' testimony in her summation, A.D.A. Gottlieb rhetorically asked, "what's [Quinones'] motive to lie? [Quinones] says I know [Rivera]. We never had a problem,

8

and I saw him come out.  I saw him come out.  Combine that with Miguel Lopez'[s] testimony and [the fact that] there is no evidence that they are in any way connected in a conspiracy." (Prosecution Summation: Tr. 875-76.)

At the close of A.D.A. Gottlieb's summation, the following colloquy took place outside the jury's presence:

> [DEFENSE COUNSEL] DUDLEY:  . . . The second objection is that we had a sidebar conference in which the People indicated that we – if we put in any evidence concerning the bad blood between Mr. Quinones and the defendant, there was a stabbing previously that they were going to try to put in the reason and that is that it had to do with drug selling between the two of them.  And Ms. Gottlieb I believe in her summation said and knowing this said Robert Quinones and the defendant had no problems.
>
> THE COURT:  Ms. Gottlieb?
>
> [A.D.A.] GOTTLIEB:  Your Honor, I'm commenting on the evidence that is in the record.  There is no evidence in the record that there was bad blood between Robert Quinones and Miguel Rivera.
>
> MR. DUDLEY:  That is bad faith when she knows that there was a stabbing between the two.  It wasn't put into evidence but it is not for her to make that argument.  I think it was inappropriate.
>
> THE COURT:  Well, what is it that you want?
>
> MR. DUDLEY:  What we would like to do is put into evidence that part of Mr. Quinones' statement in which he indicates that there was a stabbing between the two of them.
>
> THE COURT:  And what about the reason for the stabbing?
>
> MR. DUDLEY:  It is not in the statement.
>
> THE DEFENDANT:  It is not in it.

THE COURT: Well, is there anything in the record?

[A.D.A.] GOTTLIEB: No, there isn't anything in the record whatsoever, your Honor, between bad blood either between him or Miguel Rivera or Miguel Lopez and that's the People's argument.

There is nothing in the record to have these people to motivate them to lie, because there is bad blood between them. No question was asked about that. As a matter of fact, Miguel Lopez went on as to how he went to church and all the –

MR. DUDLEY: We are arguing about Robert Quinones only.

[A.D.A.] GOTTLIEB: You could have asked the question. You chose not to put any evidence about [a] bad relationship in the record.

MR. DUDLEY: I didn't think the People would get up in their summation and knowing these facts argue to the jury that they had – there were no problems between them. Because of the omission that was left out, because of their threats to bring out the fact that this was caused by a drug dealer [sic] between the two –

THE COURT: I don't think it was a threat. I think it was telling you that if you chose to open the door they would –

MR. DUDLEY: Whatever you call it.

THE COURT: Well it is once again it is notice to you as to what happens if certain approaches are taken, and that was the appropriate thing for the People to do.

MR. DUDLEY: I agree. I agree. But at the same time I think it is inappropriate for them to then argue knowing what was left out of the record that there was – to tell this jury that there was no problems between these two people.

THE COURT: Well, I'll try and deal with that in a way which doesn't suggest either that there was no bad feelings or what the reason for the bad feelings might . . .

What I will do is instruct the jurors that there was no evidence in the record of the good or bad relations between the defendant and Quinones. That there is just an absence of evidence in the record which I believe is correct.

(Tr. 878-82.)

10

During the jury charge, Justice Bamberger told the jury: "Now, ladies and gentlemen, during the course of the lawyers' summation, you heard reference to the relationship between Mr. Quinones and Mr. Rivera, the defendant. I instruct you that there is no evidence in the record as to whether they had good relations or not. (Charge: Tr. 907.)

**Verdict and Sentence**

The jury convicted Rivera of one count of second degree murder. (Verdict: Tr. 1020-22.)

On January 29, 2003, Rivera was sentenced to twenty four and one half years to life imprisonment. (Dkt. No. 5: 1/29/03 Sentencing Tr. 6.)

**Rivera's First C.P.L. § 440 Motion**

In April 2004, Rivera filed a C.P.L. § 440.10 motion claiming that his attorney was ineffective "because he failed, at trial, to challenge specifically the legal sufficiency of the evidence to support the depraved indifference murder charge." (See Dkt. No. 9: 7/3/07 Marinaccio Aff. ¶ 7 & Ex. 1: 5/26/04 Bamberger Order at 1.) On May 26, 2004, Justice Bamberger denied the motion, holding that "[b]ecause this is an on-the-record claim that can be raised by the defendant on his direct appeal, it is barred by C.P.L. § 440.10(2)(b)." (5/26/04 Bamberger Order at 1.) On September 14, 2004, the First Department granted Rivera permission to appeal the denial of his first C.P.L. § 440 motion and consolidated the matter with Rivera's direct appeal. (7/3/07 Marinaccio Aff. Ex. 2: 9/14/04 1st Dep't Order.)

**Rivera's Direct Appeal**

In August 2004, represented by new counsel, Rivera appealed to the First Department, claiming that:  (1) "[t]he evidence at trial was legally insufficient to support [Rivera's] conviction of the crime of depraved indifference murder"  (Dkt. No. 9: 7/3/07 Marinaccio Aff. Ex. 3: Rivera 1st Dep't Br. at 17-21); (2) Rivera "was deprived of the effective assistance of counsel because of trial counsel's failure to preserve by specific objection the legal insufficiency claim for the crime of depraved indifference murder" (Rivera 1st Dep't Br. at 21-23); and (3) "the cumulative effect of improper statements by the prosecutor in her opening statement and summation, deprived [Rivera] of his constitutional right to a fair trial" (Rivera 1st Dep't Br. at 24-30).

On February 10, 2005, the First Department unanimously affirmed Rivera's conviction, holding in full:

> Defendant's challenge to the sufficiency of the evidence establishing depraved indifference murder is unpreserved and we decline to review it in the interest of justice.  Were we to review this claim, we would find that the jury could have reasonably concluded that defendant lacked homicidal intent, but instead acted under circumstances evincing a depraved indifference to human life when he impulsively began firing wildly in a small grocery store, endangering numerous persons.
>
> The record establishes that defendant received effective assistance of counsel.
>
> We have considered and rejected defendant's remaining claims.

People v. Rivera, 15 A.D.3d 247, 248, 789 N.Y.S.2d 158, 158-59 (1st Dep't) (citations omitted).

On June 21, 2005, the New York Court of Appeals denied leave to appeal.  People v. Rivera, 5 N.Y.3d 768, 801 N.Y.S.2d 262 (2005).

**Rivera's Second C.P.L. § 440 Motion**

In August 2006, Rivera filed a second C.P.L § 440.10 motion claiming: (1) ineffective assistance of counsel for failing to investigate Rivera's claim that he was shot eleven months earlier by an individual who, like Dwight Milan, wore a leather jacket, and for failing to advance a justification defense at trial (5/24/07 Rivera Ltr. to Court, Att.: Rivera § 440 Aff. ¶¶ 27-44); and (2) the government unlawfully withheld police reports and a surveillance tape of the prior shooting (Rivera § 440 Aff. ¶¶ 14-27).

On April 23, 2007, Justice Robert Torres of the Supreme Court, Bronx County, denied the motion because "[t]he information provided to the Court by the Defendant was known to him at the time he made his first C.P.L. § 440.10 motion. Such argument could have been advanced in that motion." (Dkt. No. 9: 7/3/07 Marinaccio Aff. Ex. 8: 4/23/07 Torres Order.) Rivera sought leave to appeal to the First Department. (5/24/07 Rivera Ltr. to Court, Att.: 5/07 Motion for Leave to Appeal.) As of the last the Court has heard from the parties, that motion remained pending.

**Rivera's Federal Habeas Corpus Petition**

Rivera's April 11, 2007 pro se habeas corpus petition asserts that: (1) "[t]he evidence at trial was legally insufficient to support [Rivera's] conviction of the crime of depraved indifference murder" (Dkt. No. 1: Pet. ¶ 13, incorporating Rivera 1st Dep't Br. at 17-21); (2) Rivera "was deprived of the effective assistance of counsel because of trial counsel's failure to preserve by specific objection the legal insufficiency claim for the crime of depraved indifference murder" (Pet. ¶ 13, incorporating Rivera 1st Dep't Br. at 21-23); (3) "the cumulative effect of improper statements

by the prosecutor in her opening statement and summation, deprived [Rivera] of his constitutional right to a fair trial" (Pet. ¶ 13, incorporating  Rivera 1st Dep't Br. at 24-30); and (4) "the lower court inadequately rejected [that] the new section propos[ed] [by] the advisory committee [that] cover[s] paragraph[s] (B) and (C) of subdivision two of Section 440.10 of the Criminal Procedural law [should] be amended to provide that ineffective assistance of counsel claims be exempt from procedural bar to collateral review" (Pet. ¶ 13).

## ANALYSIS

## I.     THE AEDPA REVIEW STANDARD[1/]

---

[1/]     For additional decisions by this Judge discussing the AEDPA review standard in language substantially similar to that in this entire section of this Report & Recommendation, see, e.g., Garcia v. Rivera, 07 Civ. 2535, 2007 WL 2325928 at *9-12 (S.D.N.Y. Aug. 16, 2007) (Peck, M.J.); Haynesworth v. Fischer, 06 Civ. 13329, 2007 WL 2219422 at *8-11 (S.D.N.Y. Aug. 3, 2007) (Peck, M.J.); Ortiz v. Ercole, 07 Civ. 2178, 2007 WL 2086456 at *8-11 (S.D.N.Y. July 23, 2007) (Peck, M.J.); Lopez v. Miller, 05 Civ. 7060, 2007 WL 2032839 at *4-7 (S.D.N.Y. July 17, 2007) (Peck, M.J.); Morris v. Sears, 06 Civ. 2476, 2007 WL 1875665 at *6-10 (S.D.N.Y. June 29, 2007) (Peck, M.J.); Harrison v. Walsh, 06 Civ. 13328, 2007 WL 1576265 at *12-15 (S.D.N.Y. June 1, 2007) (Peck, M.J.); Brown v. Greene, 06 Civ. 4824, 2007 WL 1379873 at *8-11 (S.D.N.Y.  May 11, 2007) (Peck, M.J.); Cassie v. Graham, 06 Civ. 5536, 2007 WL 506754 at *12-15 (S.D.N.Y. Jan. 31, 2007) (Peck, M.J.); Morales v. Artus, 05 Civ. 3542, 2006 WL 3821488 at *13-16 (S.D.N.Y. Dec. 28, 2006) (Peck, M.J.) (citing my prior decisions); Bryant v. Fischer, 05 Civ. 0437, 2005 WL 3418282 at *10-14 (S.D.N.Y. Dec. 14, 2005) (Peck, M.J.); Olivo v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *5-8 (S.D.N.Y. Dec. 6, 2005) (Peck, M.J.) (citing my prior decisions), report & rec. adopted, 2006 WL 1636742 (S.D.N.Y. June 12, 2006) & 2006 WL 2689889 (S.D.N.Y. Sept. 19, 2006); Boyd v. Smith, 03 Civ. 5401, 2004 WL 2915243 at *5-7 (S.D.N.Y. Dec. 17, 2004) (Peck, M.J.) (citing my prior decisions); Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *12-14 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.) (citing my prior decisions); Larrea v. Bennett, 01 Civ. 5813, 2002 WL 1173564 at *14 (S.D.N.Y. May 31, 2002) (Peck, M.J.), report & rec. adopted, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002), aff'd, 368 F.3d 179 (2d Cir. 2004); Mendez v. Artuz, 98 Civ. 2652, 2000 WL 722613 at *22 (S.D.N.Y. June 6,
(continued...)

14

Before the Court can determine whether petitioner is entitled to federal habeas relief, the Court must address the proper habeas corpus review standard under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners." Williams v. Taylor, 529 U.S. 362, 403, 120 S. Ct. 1495, 1518 (2000). The AEDPA imposed a more stringent review standard, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[2]

---

[1]    (...continued)
2000) (Peck, M.J.), report & rec. adopted, 2000 WL 1154320 (S.D.N.Y. Aug. 14, 2000), aff'd, 303 F.3d 411, 417 (2d Cir. 2002), cert. denied, 537 U.S. 1245, 123 S. Ct. 1353 (2003); Fluellen v. Walker, 97 Civ. 3189, 2000 WL 684275 at *10 (S.D.N.Y. May 25, 2000) (Peck, M.J.), aff'd, 41 Fed. Appx. 497 (2d Cir. 2002), cert. denied, 538 U.S. 978, 123 S. Ct. 1787 (2003).

[2]    See also, e.g., Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005), cert. denied, 547 U.S. 1040, 126 S. Ct. 1622 (2006); Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004); Dallio v. Spitzer, 343 F.3d 553, 559-60 (2d Cir. 2003), cert. denied, 541 U.S. 961, 124 S. Ct. 1713 (2004); Eze v. Senkowski, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by (continued...)

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 404-05, 120 S. Ct. at 1519.[3/]  Both, however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 412, 120 S. Ct. at 1523.[4/]  "That federal law, as defined by the

---

[2/]   (...continued)
'significantly curtail[ing] the power of federal courts to grant the habeas petitions of state prisoners.'") (quoting <u>Lainfiesta</u> v. <u>Artuz</u>, 253 F.3d 151, 155 (2d Cir. 2001), <u>cert. denied</u>, 535 U.S. 1019, 122 S. Ct. 1611 (2002)).

[3/]   <u>Accord</u>, <u>e.g.</u>, <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Parsad</u> v. <u>Greiner</u>, 337 F.3d 175, 181 (2d Cir.), <u>cert. denied</u>, 540 U.S. 1091, 124 S. Ct. 962 (2003); <u>Jones</u> v. <u>Stinson</u>, 229 F.3d 112, 119 (2d Cir. 2000); <u>Lurie</u> v. <u>Wittner</u>, 228 F.3d 113, 125 (2d Cir. 2000), <u>cert. denied</u>, 532 U.S. 943, 121 S. Ct. 1404 (2001); <u>Clark</u> v. <u>Stinson</u>, 214 F.3d 315, 320 (2d Cir. 2000), <u>cert. denied</u>, 531 U.S. 1116, 121 S. Ct. 865 (2001).

[4/]   <u>Accord</u>, <u>e.g.</u>, <u>Carey</u> v. <u>Musladin</u>, 127 S. Ct. 649, 654 (2006) ("Given the lack of holdings from the Court regarding this [issue], it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"); <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. 652, 659, 124 S. Ct. 2140, 2147 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. 510, 519, 123 S. Ct. 2527, 2534 (2003); <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. 63, 72, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"); <u>Rodriguez</u> v. <u>Miller</u>, – F.3d –, 2007 WL 2445120 at *3 (2d Cir. Aug. 29, 2007) ("'Clearly established federal law' refers only to the holdings of the Supreme Court.  No principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief.  Leading by example, <u>Musladin</u> admonishes courts to read the Supreme Court's holdings narrowly and to disregard as dicta for habeas purposes much of the underlying logic and rationale of the high court's decisions.") (citations & fn. omitted); <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Tueros</u> v. <u>Greiner</u>, 343 F.3d 587, 591 (2d Cir. 2003), <u>cert. denied</u>, 541 U.S. 1047, 124 S. Ct. 2171 (2004); <u>Parsad</u> v. <u>Greiner</u>, 337 F.3d at 181; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d 1197, 1200 (2d Cir. 2002); <u>Yung</u> v. <u>Walker</u>, 341 F.3d 104, 109-110 (2d Cir. 2003); <u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d 36, 42 (2d Cir.), <u>cert. denied</u>, 537 U.S. 909, 123 S. Ct. 251 (2002); <u>Loliscio</u> v. <u>Goord</u>, 263 F.3d 178, 184 (2d Cir. 2001); <u>Sellan</u> v. <u>Kuhlman</u>, 261 F.3d
(continued...)

Supreme Court, may be either a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d at 42. "A petitioner can not win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent." Yung v. Walker, 341 F.3d at 110; accord, e.g., Rodriguez v. Miller, 2007 WL 2445120 at *3, 5-6; DelValle v. Armstrong, 306 F.3d at 1200.

> As to the "contrary to" clause:
>
> A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . . A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

Williams v. Taylor, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[5/]

In Williams, the Supreme Court explained that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing

---

[4/]    (...continued)
303, 309 (2d Cir. 2001).

[5/]    Accord, e.g., Brown v. Payton, 544 U.S. 133, 125 S. Ct. 1432, 1438-39 (2005); Bell v. Cone, 543 U.S. 447, 452-53, 125 S. Ct. 847, 851 (2005); Price v. Vincent, 538 U.S. 634, 640, 123 S. Ct. 1848, 1853 (2003); Lockyer v. Andrade, 123 S. Ct. at 1173-74; Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006), cert. denied, 127 S. Ct. 1267 (2007); Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d 210, 219 (2d Cir.), cert. denied, 546 U.S. 889, 126 S. Ct. 215 (2005); Tueros v. Greiner, 343 F.3d at 591; DelValle v. Armstrong, 306 F.3d at 1200; Yung v. Walker, 341 F.3d at 109; Kennaugh v. Miller, 289 F.3d at 42; Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 127-28.

legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 413, 120 S. Ct. at 1523.[6] However, "[t]he term 'unreasonable' is . . . difficult to define." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 410, 120 S. Ct. at 1522. The Supreme Court made clear that "an <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law." <u>Id</u>.[7] Rather, the issue is "whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 409, 120 S. Ct. at 1521.[8] "Objectively unreasonable" is different from "clear error."

---

[6]    Accord, <u>e.g.</u>, <u>Brown</u> v. <u>Payton</u>, 544 U.S. at 141, 125 S. Ct. at 1439; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 520, 123 S. Ct. at 2534-35; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d 238, 246 (2d Cir. 2006), <u>cert. denied</u>, 127 S. Ct. 1383 (2007); <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Parsad</u> v. <u>Greiner</u>, 337 F.3d at 181.

[7]    See also, <u>e.g.</u>, <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2150; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 520, 123 S. Ct. at 2535; <u>Price</u> v. <u>Vincent</u>, 538 U.S. at 641, 123 S. Ct. at 1853 ("As we have explained: '[A] federal habeas court may not issue the writ simply because that court concludes that the state-court decision applied [a Supreme Court case] incorrectly.'") (quoting <u>Woodford</u> v. <u>Visciotti</u>, 537 U.S. 19, 24-25, 123 S. Ct. 357, 360 (2002)); <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1175; <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d at 243; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d at 219; <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d at 197; <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d at 124-25; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d at 1200 ("With regard to issues of law, therefore, if the state court's decision was not an unreasonable application of, or contrary to, clearly established federal law as defined by Section 2254(d), we may not grant habeas relief even if in our judgment its application was erroneous.").

[8]    Accord, <u>e.g.</u>, <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2150; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 520-21, 123 S. Ct. at 2535; <u>Price</u> v. <u>Vincent</u>, 538 U.S. at 641, 123 S. Ct. at 1853; <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1174-75; <u>Woodford</u> v. <u>Visciotti</u>, 537 U.S. at 25-27, 123 S. Ct. at 360-61; <u>Mosby</u> v. <u>Senkowski</u>, 470 F.3d 515, 519 (2d Cir. 2006); <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d at 243; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d at 197; <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d at 125; <u>Ryan</u> v. <u>Miller</u>, 303 F.3d 231, 245 (2d Cir. 2002);
(continued...)

Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness.").  However, the Second Circuit has explained "that while '[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" Jones v. Stinson, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).[9/]  "[T]he range of reasonable judgment can depend in part on the nature of the relevant rule." Yarborough v. Alvarado, 541 U.S. at 663, 124 S. Ct. at 2149.[10/]

---

[8/]     (...continued)
Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 128-29.

[9/]     Accord, e.g., Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197, 200-01; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d at 245; Yung v. Walker, 341 F.3d at 110; Loliscio v. Goord, 263 F.3d at 184.

[10/]    The Supreme Court explained:

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule may be plainly correct or incorrect.  Other rules are more general, and their meaning must emerge in application over the course of time.  Applying a general standard to a specific case can demand a substantial element of judgment.  As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. at 663, 124 S. Ct. at 2149; accord, e.g., Rodriguez v. Miller, 2007 WL 2445120 at *6; Hawkins v. Costello, 460 F.3d at 243.

Moreover, the Second Circuit has held "that a state court determination is reviewable under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." Kennaugh v. Miller, 289 F.3d at 45.[11/]

Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference."  Yung v. Walker, 341 F.3d at 109; accord, e.g., Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853; Mosby v. Senkowski, 470 F.3d at 519.

Even where the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the deferential AEDPA review standard applies:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment.  When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

Sellan v. Kuhlman, 261 F.3d at 312; accord, e.g., Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853 ("Federal courts are not free to presume that a state court did not comply with constitutional dictates

---

[11/]     Accord, e.g., Tueros v. Greiner, 343 F.3d at 591; Yung v. Walker, 341 F.3d at 109; see Yarborough v. Alvarado, 541 U.S. at 665-66, 124 S. Ct. at 2150-51 ("The petitioner contends that if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision.  There is force to this argument.  Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.  At the same time, the difference between applying a rule and extending it is not always clear.  Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.") (citations omitted).

20

on the basis of nothing more than a lack of citation."); Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (State court not required to cite Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court decision contradicts them."); Mosby v. Senkowski, 470 F.3d at 519; Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 220; Wade v. Herbert, 391 F.3d 135, 140 (2d Cir. 2004) (Appellate Division held claim was "'without merit.'"  "Such a summary determination, even absent citation of federal case law, is a determination 'on the merits' and as such requires the deference specified by § 2254."  Moreover, "[I]f any reasonable ground was available [for the state court's decision], we must assume the [state] court relied on it."); Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir.) (Where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants' remaining claims,'" AEDPA deference applies.), cert. denied, 543 U.S. 872, 125 S. Ct. 110 (2004); Jenkins v. Artuz, 294 F.3d 284, 291 (2d Cir. 2002) ("In Sellan, we found that an even more concise Appellate Division disposition – the word 'denied' – triggered AEDPA deference."); but cf. Bell v. Miller, – F.3d –, 2007 WL 2469423 at *4 (2d Cir. Aug. 31, 2007) (A "contrary-to-fact construction is not the same as an alternative holding. . . .  We decline to read a contingent observation as an 'adjudication on the merits.'"  De novo review applies in such a case.).

       Where the state court decision is not clear as to whether it rests on federal law or state procedural law, the Second Circuit in Jimenez v. Walker, 458 F.3d 130, 145-46 (2d Cir. 2006), cert. denied, 127 S. Ct. 976 (2007), instructed that the court must "examine the three clues laid out in

<u>Coleman</u>, <u>Quirama</u> and <u>Sellan</u>" – that is, "(1) the face of the state-court opinion, (2) whether the state court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances." <u>Jimenez</u> v. <u>Walker</u>, 458 F.3d at 145 & n.16.  Using these three factors, the court should

> classify the decision as either:
>
> > (1)    fairly appearing to rest primarily on federal law or to be interwoven with federal law or
> >
> > (2)    fairly appearing to rest primarily on state procedural law.
>
> Absent a clear and express statement of reliance on a state procedural bar, the <u>Harris</u> presumption applies to decisions in the first category and deems them to rest on the merits of the federal claim.  Such decisions are not procedurally barred and must be afforded AEDPA deference as adjudications "on the merits" under 28 U.S.C. § 2254(d).  The <u>Harris</u> presumption does not apply to decisions in the second category, which show themselves to rest on an independent state procedural bar.  Nor does it apply to decisions in the first category which contain a clear statement of reliance on a state procedural bar.  No AEDPA deference is due to these decisions, but the state may successfully assert that habeas relief is foreclosed provided that the independent state procedural bar is adequate to support the judgment and that neither cause and prejudice nor a fundamental miscarriage of justice is shown.
>
> The effect of these rules is to present federal habeas courts with a binary circumstance: we either apply AEDPA deference to review a state court's disposition of a federal claim or refuse to review the claim because of a procedural bar properly raised.  The middle ground . . . does not exist.

<u>Jimenez</u> v. <u>Walker</u>, 458 F.3d at 145-46 (citations & fns. omitted); <u>accord</u>, <u>e.g.</u>, <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d at 242 ("In <u>Jimenez</u> v. <u>Walker</u>, we recently made clear that when a state court rejects a petitioner's claim as either unpreserved or without merit, the conclusive presumption is that the adjudication rested on the merits.").  Of course, "[i]f there is no [state court] adjudication on the merits [and no procedural bar], then the pre-AEDPA, <u>de</u> <u>novo</u> standard of review applies." <u>Cotto</u>

v. Herbert, 331 F.3d 217, 230 (2d Cir. 2003); see also Jimenez v. Walker, 458 F.3d at 145 n.17.

Finally, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." Howard v. Walker, 406 F.3d at 122.

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations: "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); accord, e.g., Lynn v. Bliden, 443 F.3d at 246-47; Rosa v. McCray, 396 F.3d at 220. "The petitioner bears the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'" Parsad v. Greiner, 337 F.3d at 181 (quoting § 2254(e)(1)); accord, e.g., Lynn v. Bliden, 443 F.3d at 246-47.

## II.    RIVERA'S CLAIM THAT THE EVIDENCE AT TRIAL WAS LEGALLY INSUFFICIENT TO SUPPORT HIS DEPRAVED INDIFFERENCE MURDER CONVICTION IS BARRED BY ADEQUATE AND INDEPENDENT STATE LAW GROUNDS[12]/

---

[12]/    For additional decisions by this Judge discussing the adequate and independent state ground doctrine in language substantially similar to that in this entire section of this Report and Recommendation, see, e.g., Haynesworth v. Fischer, 06 Civ. 13329, 2007 WL 2219422 at *11-12 (S.D.N.Y. Aug. 3, 2007) (Peck, M.J.); Morris v. Sears, 06 Civ. 2476, 2007 WL 1875665 at *9-13 (S.D.N.Y. June 29, 2007) (Peck, M.J.); Harrison v. Walsh, 06 Civ. 13328, 2007 WL 1576265 at *15-18 (S.D.N.Y June 1, 2007) (Peck, M.J.); Murray v. Greene, 06 Civ. 3677, 2006 WL 3751294 at *13-17 (S.D.N.Y. Dec. 21, 2006) (Peck, M.J.) (citing my prior decisions); Olivo v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *8 (S.D.N.Y. Dec. 6, 2005) (Peck, M.J.) (citing my prior decisions), report & rec. adopted, 2006 WL 1636742 (S.D.N.Y. June 12, 2006); Otero v. Eisenschmidt, 01 Civ. 2562, 2004 WL 2504382 at *17-18 (S.D.N.Y. Nov. 8, 2004) (Peck, M.J.) (citing my prior decisions); Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *18-21 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.) (citing my prior decisions); Rosario v. Bennett, 01 Civ. 7142, 2002 WL 31852827 at *18- 21 (continued...)

Rivera's claim – that "[t]he evidence at trial was legally insufficient to support [Rivera's] conviction of the crime of depraved indifference murder" (Dkt. No. 1: Pet. ¶ 13, incorporating Rivera 1st Dep't Br. at 17-21) – was denied by the First Department on Rivera's direct appeal as "unpreserved" (<u>see</u> page 11 above).

A.    **Adequate and Independent State Ground Doctrine**

The Supreme Court has made clear that the "adequate and independent state ground doctrine applies on federal habeas," such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." <u>Harris</u> v. <u>Reed</u>, 489 U.S. 255, 262, 109 S. Ct. 1038, 1043 (1989) (citations & internal quotations omitted).[13]

12/    (...continued)
(S.D.N.Y. Dec. 20, 2002) (Peck, M.J.) (citing my prior decisions); <u>Larrea</u> v. <u>Bennett</u>, 01 Civ. 5813, 2002 WL 1173564 at *8-9 (S.D.N.Y. May 31, 2002) (Peck, M.J.), <u>report & rec. adopted</u>, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002), <u>aff'd</u>, 368 F.3d 179 (2d Cir. 2004); <u>Mercado</u> v. <u>Portuondo</u>, 99 Civ. 11234, 2000 WL 1663437 at *12 (S.D.N.Y. Nov. 3, 2000) (Peck, M.J.), <u>report & rec. adopted</u>, 2001 WL 987926 (S.D.N.Y. Aug. 29, 2001), <u>aff'd</u>, 77 Fed. Appx. 546 (2d Cir. 2003); <u>Owens</u> v. <u>Portuondo</u>, 98 Civ. 6559, 1999 WL 378343 at *5 (S.D.N.Y. June 9, 1999) (Peck, M.J.), <u>aff'd</u>, 205 F.3d 1324 (2d Cir. 2000).

13/    <u>See also</u>, <u>e.g.</u>, <u>Schlup</u> v. <u>Delo</u>, 513 U.S. 298, 314-16, 115 S. Ct. 851, 860-61 (1995); <u>Coleman</u> v. <u>Thompson</u>, 501 U.S. 722, 735, 111 S. Ct. 2546, 2557 (1991); <u>Murray</u> v. <u>Carrier</u>, 477 U.S. 478, 485-88, 496, 106 S. Ct. 2639, 2644-45, 2649-50 (1986); <u>Jones</u> v. <u>Vacco</u>, 126 F.3d 408, 415 (2d Cir. 1997); <u>Garcia</u> v. <u>Lewis</u>, 188 F.3d 71, 76-77 (2d Cir. 1999); <u>Reyes</u> v. <u>Keane</u>, 118 F.3d 136, 138-40 (2d Cir. 1997); <u>Glenn</u> v. <u>Bartlett</u>, 98 F.3d 721, 724 (2d Cir. 1996), <u>cert. denied</u>, 520 U.S. 1108, 117 S. Ct. 1116 (1997); <u>Velasquez</u> v. <u>Leonardo</u>, 898 F.2d
(continued...)

"[I]n order to preclude federal review [under the adequate and independent doctrine], the last state court to render judgment must 'clearly and expressly state [ ] that its judgment rest[ed] on a state procedural bar.'" Jones v. Vacco, 126 F.3d at 415 (quoting Glenn v. Bartlett, 98 F.3d at 724). The Second Circuit has made clear that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Velasquez v. Leonardo, 898 F.2d at 9; accord, e.g., Harris v. Reed, 489 U.S. at 264 n.10, 109 S. Ct. at 1044 n.10 ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").[14] Thus, "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent doctrine "curtails reconsideration of the federal issue on federal habeas." Harris v. Reed, 489 U.S. at 264 n.10, 109 S. Ct. at 1044 n.10.

---

[13]    (...continued)
7, 9 (2d Cir. 1990).

[14]    See, e.g., Garcia v. Lewis, 188 F.3d at 77-82; Glenn v. Bartlett, 98 F.3d at 724-25; see also, e.g., Santiago v. People, 97 Civ. 5076, 1998 WL 803414 at *4 (S.D.N.Y. Oct. 13, 1998) ("When the state court rejects a claim both on the merits and because it was waived under the state's procedural law, review of the claim on a federal habeas corpus petition is barred.").

### B.    Rivera's Insufficient Evidence Habeas Claim Is Procedurally Barred

Rivera raised in his brief to the First Department the same claim – that "[t]he evidence at trial was legally insufficient to support [Rivera's] conviction of the crime of depraved indifference murder (Dkt. No. 1: Pet. ¶ 13, incorporating Rivera 1st Dep't Br. at 17-21)  – that he now raises as a habeas claim.  The First Department held that:

> Defendant's challenge to the sufficiency of the evidence establishing depraved indifference murder is unpreserved and we decline to review it in the interest of justice.  Were we to review this claim, we would find that the jury could have reasonably concluded that defendant lacked homicidal intent, but instead acted under circumstances evincing a depraved indifference to human life when he impulsively began firing wildly in a small grocery store, endangering numerous persons.

People v. Rivera, 15 A.D.3d 247, 248, 789 N.Y.S.2d 158, 158-59 (1st Dep't), appeal denied, 5 N.Y.3d 768, 801 N.Y.S.2d 262 (2005).

State courts are not required to use any particular language:

> We encourage state courts to express plainly, in every decision potentially subject to federal review, the grounds upon which their judgments rest, but we will not impose on state courts the responsibility for using particular language in every case in which a state prisoner presents a federal claim – every state appeal, every denial of state collateral review – in order that federal courts might not be bothered with reviewing state law and the record in the case.

Coleman v. Thompson, 501 U.S. 722, 739, 111 S. Ct. 2546, 2559 (1991).

Furthermore, unlike the situation where the state court holds that claims were either unpreserved or without merit, which the Second Circuit has found is usually too ambiguous to

preclude habeas review,[15/] here the First Department explicitly stated that it found Rivera's claim "unpreserved," People v. Rivera, 15 A.D.3d at 248, 789 N.Y.S.2d at 158-59, and the fact that the First Department also stated the conclusion it would reach on the merits if it was to review this claim, id., does not change the result.  See, e.g., Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810-11 & n.4 (2d Cir. 2000) ("where a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved"); Glenn v. Bartlett, 98 F.3d 721, 724-25 & n.3 (2d Cir. 1996) (state decision which denied prosecutorial misconduct claim as not preserved for appellate review represented an independent and adequate state procedural ground even though court addressed merits of claim "in the interests of justice"), cert. denied, 520 U.S. 1108, 117 S. Ct. 1116 (1997); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (state decision which denied claims as procedurally barred but then alternatively addressed merits rested on adequate and independent state grounds); Murray v. Greene, 06 Civ. 3677, 2006 WL 3751294 at *15 n.30 (S.D.N.Y. Dec. 21, 2006) (Peck, M.J.) (& cases cited therein).  Thus, the First Department's decision here unambiguously rested on a state procedural ground.[16/]

---

[15/]     See, e.g., Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001) ("We have found a state court's reliance on a state procedural bar to be ambiguous, and thus refused to invoke a procedural bar, where . . . the state court rejected defendant's claims on appeal as 'either meritless or unpreserved.'"); Tankleff v. Senkowski, 135 F.3d 235, 247 (2d Cir. 1998); Reid v. Senkowski, 961 F.2d 374, 377 (2d Cir. 1992).

[16/]     The New York Court of Appeals denied petitioner's application for leave to appeal.  (See page 11 above.)  The Supreme Court held in Ylst v. Nunnemaker, 501 U.S. 797, 111 S. Ct. 2590 (1991), with respect to unexplained orders, that federal habeas courts should presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later (continued...)

The Supreme Court has established that "the procedural bar doctrine only precludes habeas review when the state procedural ground is firmly established and regularly followed by the state courts." Simpson v. Portuondo, 01 Civ. 8744, 2002 WL 31045862 at *4 (S.D.N.Y. June 4, 2002) (citing James v. Kentucky, 466 U.S. 341, 348-49, 104 S. Ct. 1830, 1835 (1984)).

Under New York law, "[a]s a general rule points which were not raised at trial may not be considered for the first time on appeal." People v. Thomas, 50 N.Y.2d 467, 471, 429 N.Y.S.2d 584 (1980) (citing C.P.L. § 470.05(2)).[17] Moreover, a party must make a specific protest at the time of a claimed error to preserve an issue for appellate review. E.g., People v. Hardy, 4 N.Y.3d 192, 197 n.3, 791 N.Y.S.2d 513, 517 n.3 (2005). Failure to specify the grounds for a claim

---

[16]    (...continued)
unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Id. at 803, 111 S. Ct. at 2594. Petitioner has presented no facts to rebut that presumption here.

[17]    C.P.L. § 470.05(2) provides, in relevant part:

> For the purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in response to a protest by a party, the court expressly decided the question raised on appeal. In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

of error at the time of an objection (either because an objection is general, or because it specifies a different ground than that raised on appeal) renders claims not specified unpreserved for appellate review. E.g., Olivo v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *10 (S.D.N.Y. Dec. 6, 2005) (Peck, M.J.) ("Under New York law, a party's failure to specify the grounds for its general objection also renders its argument unpreserved for appellate review.") (citing N.Y. cases).[18]

        Here, Rivera's counsel never specifically challenged the sufficiency of the evidence establishing depraved indifference murder at trial. (See pages 6-7 above.)  Trial counsel made only a "generic" motion to dismiss at the close of the evidence.  (See pages 6-7 above.)  Trial counsel merely stated that he "would move to dismiss all of the charges against the defendant.  On the grounds that the People have not proven his guilt beyond a reasonable doubt, I'd ask for a trial order of dismissal . . . ."  (Tr. 773, also quoted at page 7 above.)  New York case law makes clear that such a boilerplate motion, without explanation, is not sufficient to preserve a challenge to the sufficiency

---

[18]    See also, e.g., People v. Kello, 96 N.Y.2d 740, 743-44, 723 N.Y.S.2d 111, 113 (2001) (Claim is unpreserved where defendant "never based his trial objection to the 911 tapes on the Confrontation Clause.  Rather, the only issue raised before the trial court was the erroneous admission of the tapes under our State common-law hearsay rule. . . . The defendant's failure to raise a Confrontation Clause objection precluded the trial court and prosecution from considering and, thus, avoiding any constitutional error which . . . differs from the trial evidence error which was preserved."); People v. Tonge, 93 N.Y.2d 838, 839-40, 688 N.Y.S.2d 88, 88 (1999) ("a party's failure to specify the basis for a general objection renders the argument unpreserved for [state appellate] review."); People v. Robinson, 88 N.Y.2d 1001, 1002, 648 N.Y.S.2d 869, 870 (1996) ("to frame and preserve a question of law reviewable by this Court, an objection or exception must be made with sufficient specificity at the trial, when the nisi prius court has an opportunity to consider and deal with the asserted error."); People v. Velasco, 77 N.Y.2d 469, 474, 568 N.Y.S.2d 721, 723 (1991); People v. Dien, 77 N.Y.2d 885, 886, 568 N.Y.S.2d 899, 900 (1991).

of the evidence.  See, e.g., People v. Danielson, 40 A.D.3d 174, 176, 832 N.Y.S.2d 546, 548 (1st

Dep't 2007) ("[D]efendant's legal sufficiency claim is unpreserved.  Defendant's motion for a trial

order of dismissal was predicated exclusively on the lack of credible evidence that he was present

at the murder scene.  There was no mention of the argument he now raises on appeal, namely, that

the trial evidence supported only a theory of intentional murder, not a reckless one committed under

circumstances evincing a depraved indifference to human life.  Because defendant's dismissal motion

was not specifically directed at the alleged insufficiency that he now raises on appeal, the claim is

unpreserved as a matter of law, and we decline to review it in the interests of justice.") (citations

omitted); People v. Craft, 36 A.D.3d 1145, 1146, 827 N.Y.S.2d 376, 377 (3d Dep't 2007) ("We

recently held in a case challenging the legal sufficiency of the evidence in an appeal from a depraved

indifference murder conviction that such issue had 'not been properly preserved for judicial review

because [defendant] failed to seek dismissal at the conclusion of the People's case or at the end of

the trial by making a detailed, specific motion addressed to the claimed deficiencies in the evidence.'

Such precedent compels the conclusion that the issue was not properly preserved in the current

case.") (citations omitted); People v. Hall, 32 A.D.3d 864, 864, 820 N.Y.S.2d 526, 526 (2d Dep't

2006) ("The defendant's claim that the evidence was insufficient to establish his guilt of depraved

indifference murder was not preserved for appellate review as the defendant's motion to dismiss was

not 'specifically directed' to the depraved indifference charge.") (citations omitted); People v. Flores,

23 A.D.3d 194, 195, 803 N.Y.S.2d 85, 86 (1st Dep't 2005) ("Defendant's argument that the evidence

was legally insufficient to support his conviction for depraved indifference murder because his

actions established an intentional murder is unpreserved.  In his motion for a trial order of dismissal,

defense counsel stated:  'I ask for a trial order of dismissal, that the People have not proved that

defendant acted under circumstances evincing a depraved indifference to human life.'  Thus,

defendant did not alert the court to the instant argument, that his conduct was intentional, not

reckless.") (citations omitted), appeal denied, 6 N.Y.3d 775, 811 N.Y.S.2d 343 (2006); People v.

Morrison, 17 A.D.3d 272, 272, 795 N.Y.S.2d 2, 3 (1st Dep't 2005) ("Neither defendant's generalized

motion to dismiss, nor his motion to set aside the verdict preserved his argument that his conduct

clearly constituted intentional murder and thus failed to support his conviction of depraved

indifference asault . . . .") (citations omitted).[19]

       Both the Supreme Court and the Second Circuit have held that the failure to object

at trial when required by New York's contemporaneous objection rule, C.P.L. § 470.05, is an

adequate and independent state ground.  See, e.g., Wainwright v. Sykes, 433 U.S. 72, 86, 90, 97 S.

Ct. 2497, 2506-08 (1977) (contemporaneous objection rule is an adequate and independent state

ground); Murray v. Carrier, 477 U.S. 478, 485-92, 497, 106 S. Ct. 2639, 2644-48, 2650 (1986)

---

[19]    See also, e.g., People v. Gray, 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173, 175 (1995) ("[E]ven
where a motion to dismiss for insufficient evidence was made, the preservation requirement
compels that the argument be 'specifically directed' at the alleged error . . . ."); People v.
Stahl, 53 N.Y.2d 1048, 1049-50, 442 N.Y.S.2d 488, 489 (1981) ("The contention that the
judgment of conviction must be set aside for failure of proof [of a specific element] was not
preserved for appellate review in consequence of the absence of specific reference to the
asserted deficiency as a basis for the general motion for a trial order of dismissal."); People
v. Cona, 49 N.Y.2d 26, 33 n.2, 424 N.Y.S.2d 146, 148 n.2 (1979) ("[T]he failure to specify
the lack of corroboration for [witness's] testimony as a basis for the motion to dismiss the
case against these seven defendants precludes later use of that motion as a vehicle for
creating a question of law on this point.").

(same); Franco v. Walsh, 73 Fed. Appx. 517, 518 (2d Cir. 2003) (finding petitioner's claim of an

erroneous jury charge procedurally defaulted because "[n]o contemporaneous objection to the charge

was lodged, and the Appellate Division found that the issue was therefore unpreserved."); Garcia v.

Lewis, 188 F.3d 71, 79 (2d Cir. 1999) ("we have observed and deferred to New York's consistent

application of its contemporaneous objection rules") (citing Bossett v. Walker, 41 F.3d 825, 829 n.2

(2d Cir. 1994) (respecting state court's application of C.P.L. § 470.05(2) as adequate bar to federal

habeas review), cert. denied, 514 U.S. 1054, 115 S. Ct. 1436 (1995), & Fernandez v. Leonardo, 931

F.2d 214, 216 (2d Cir.) (noting that failure to object at trial constitutes adequate procedural default

under C.P.L. § 470.05(2)), cert. denied, 502 U.S. 883, 112 S. Ct. 236 (1991)); Glenn v. Bartlett, 98

F.3d at 724-25 (failure to object constituted adequate and independent state ground); Velasquez v.

Leonardo, 898 F.2d at 9 (violation of New York's contemporaneous objection rule is an adequate and

independent state ground).[20]

---

[20]    See also, e.g., Figueroa v. Greiner, 02 Civ. 2126, 2002 WL 31356512 at *11-12 (S.D.N.Y. Oct. 18, 2002) (Peck, M.J.) ("The Second Circuit has held that the failure to object at trial when required by New York's contemporaneous objection rule, C.P.L. § 470.05, is an adequate and independent state ground."); Cooper v. LeFevre, No. 94 CV 5958, 1998 WL 386340 at *2 (E.D.N.Y. July 8, 1998) ("[T]he Second Department held that [the petitioner's] claim was unpreserved because] the Petitioner violated the contemporaneous objection rule by failing 'to raise specific objections to the evidence . . . ' he cited in his appeal as having deprived him of a fair trial. . . . This Court finds that the Second Department's basis for denying Petitioner's claim was both independent of the federal question raised by such claim and adequate to support the judgment.  As a result, this Court is procedurally barred from reviewing the merits of Petitioner's claim."); Jamison v. Smith, No. 94 CV 3747, 1995 WL 468279 at *2 (E.D.N.Y. July 26, 1995) ("Courts in this circuit have consistently held that the failure to object contemporaneously . . . constitutes an adequate and independent basis for barring habeas review.").

More specifically, district court decisions within the Circuit have upheld as an adequate and independent state ground New York's rule that boilerplate motions to dismiss that do not set forth the specific grounds for the alleged insufficiency of the evidence fail to preserve the issue.  See, e.g., Brito v. Phillips, 485 F. Supp. 2d 357, 363 (S.D.N.Y. 2007) ("New York courts have consistently held that a general motion to dismiss does not preserve a challenge to the legal sufficiency of the evidence of depraved indifference.") (citing N.Y. cases); see also, e.g., Weathers v. Conway, No. 05-CV-139, 2007 WL 2344858 at *8 (W.D.N.Y. Aug. 15, 2007) ("Under caselaw applying New York's contemporaneous objection rule, this generalized motion [to dismiss on grounds that prosecution "haven't met their burden"] was not sufficient to preserve a specific objection to the legal sufficiency of evidence of a robbery."); Brown v. People, No. 04 CV 1087, 2006 WL 3085704 at *3 (E.D.N.Y. Oct. 30, 2006) (holding general motion to dismiss that "did not specifically mention the sufficiency of the evidence regarding forcible compulsion . . . was 'unpreserved for appellate review.'"  Such a procedural default  "constitutes an independent and adequate state ground."); Pretlow v. Lord, No. 03 CV 2547, 2005 WL 1073609 at *2 (E.D.N.Y. Apr. 29, 2005) ("New York courts have required that a motion to dismiss for insufficient evidence be specifically directed at the alleged error.  At the conclusion of the People's case against [petitioner], Defense Counsel moved to dismiss all of the charges on the general grounds that the People had failed to establish each and every element of the charges. . . .[T]his Court finds that the Appellate Division's finding of procedural default is an independent and adequate state ground for barring this claim in federal court.") (citations & quotations omitted); Besser v. Walsh, 02 Civ. 6775,

2003 WL 22093477 at *21 (S.D.N.Y. Sept. 10, 2003) (Peck, M.J.) ("'It is black letter law in New York that a defendant's trial motion to dismiss for insufficiency of the evidence must be "specifically directed" at the alleged error to be preserved for appellate review.'" State court's denial of claim thus rests on adequate and independent state law grounds.) (quoting Ibarra v. Burge, 02 Civ. 0825, 2002 WL 11467756 at *3 (S.D.N.Y. July 9, 2002) (Peck, M.J.)), report & rec. adopted, 2003 WL 22846044 (S.D.N.Y. Dec. 2, 2003).

Because there is an adequate and independent finding by the First Department that Rivera procedurally defaulted on his challenge to the sufficiency of the evidence, Rivera would have to show in his habeas petition "cause for . . . the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. at 750, 111 S. Ct. at 2565.[21/] Rivera does not allege cause, prejudice or a fundamental miscarriage of justice, with the exception of his habeas claim of ineffective assistance of counsel, addressed in Point III below.

Rivera's insufficiency of the evidence habeas claim should be DENIED as procedurally barred from habeas review by adequate and independent state law grounds.

---

[21/]   See also, e.g., Schlup v. Delo, 513 U.S. 298, 324-27, 115 S. Ct. 851, 865-67 (1995) (fundamental miscarriage of justice may be demonstrated by showing through "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.").

## III.   RIVERA'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM SHOULD BE DENIED

### A.   The **Strickland** v. **Washington** Standard on Ineffective Assistance of Trial Counsel [22/]

In <u>Strickland</u> v. <u>Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Supreme Court announced a two-part test to determine if counsel's assistance was ineffective:  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by

---

[22/]   For additional decisions authored by this Judge discussing the <u>Strickland</u> v. <u>Washington</u> standard for ineffective assistance of counsel in language substantially similar to this section of this Report and Recommendation, <u>see</u>, <u>e.g.</u>, <u>Rivera</u> v. <u>United States</u>, 06 Civ. 14421, 04 Crim. 407, 2007 WL 1953430 at *6-7 (S.D.N.Y. July 6, 2007) (Peck, M.J.); <u>Brown</u> v. <u>Greene</u>, 06 Civ. 4824, 2007 WL 1379873 at *11-12 (S.D.N.Y. May 11, 2007) (Peck, M.J.); <u>Cassie</u> v. <u>Graham</u>, 06 Civ. 5536, 2007 WL 506754 at *21-23 (S.D.N.Y. Jan. 31, 2007) (Peck, M.J.); <u>Brown</u> v. <u>Brown</u>, 05 Civ. 10434, 2006 WL 3405480 at *14-15 (S.D.N.Y. Nov. 27, 2006) (Peck, M.J.) (citing my prior decisions); <u>Pena</u> v. <u>United States</u>, 04 Civ. 9700, 00 Cr. 36, 2005 WL 1176073 at *4-5 (S.D.N.Y. May 18, 2005) (Peck, M.J.); <u>Yapor</u> v. <u>Mazzuca</u>, 04 Civ. 7966, 2005 WL 894918 at *23-25 (S.D.N.Y. Apr. 19, 2005) (Peck, M.J.) (citing my prior decisions), <u>report & rec. adopted</u>, 2005 WL 1845089 (S.D.N.Y. Aug. 3, 2005); <u>Curry</u> v. <u>Burge</u>, 03 Civ. 0901, 2004 WL 2601681 at *26-27 (S.D.N.Y. Nov. 17, 2004) (Peck, M.J.) (citing my prior decisions); <u>Montalvo</u> v. <u>Annetts</u>, 02 Civ. 1056, 2003 WL 22962504 at *22-24 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.) (citing my prior decisions); <u>Quinones</u> v. <u>Miller</u>, 01 Civ. 10752, 2003 WL 21276429 at *18-19 (S.D.N.Y. June 3, 2003) (Peck, M.J.) (citing my prior decisions), <u>report & rec. adopted</u>, 2005 WL 730171 (S.D.N.Y. Mar. 31, 2005), <u>aff'd</u>, 2007 WL 870375 (2d Cir. 2007); <u>Larrea</u> v. <u>Bennett</u>, 01 Civ. 5813, 2002 WL 1173564 at *16-19 (S.D.N.Y. May 31, 2000) (Peck, M.J.), <u>report & rec. adopted</u>, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002), <u>aff'd</u>, 368 F.3d 179 (2d Cir. 2004); <u>Fluellen</u> v. <u>Walker</u>, 97 Civ. 3189, 2000 WL 684275 at *11 (S.D.N.Y. May 25, 2000) (Peck, M.J.), <u>aff'd</u>, 41 Fed. Appx. 497 (2d Cir. 2002), <u>cert. denied</u>, 538 U.S. 978, 123 S. Ct. 1787 (2003).

the Sixth Amendment." Id. at 687, 104 S. Ct. at 2064.[23/]  This performance is to be judged by an

objective standard of reasonableness.  Strickland v. Washington, 466 U.S. at 688, 104 S. Ct. at

2064.[24/]

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction . . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time . . . .  [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Strickland v. Washington, 466 U.S. at 689, 104 S. Ct. at 2065 (citation omitted).[25/]

Second, the defendant must show prejudice from counsel's performance.  Strickland

v. Washington, 466 U.S. at 687, 104 S. Ct. at 2064.  The "question is whether there is a reasonable

probability that, absent the errors, the fact finder would have had a reasonable doubt respecting

guilt." Id. at 695, 104 S. Ct. at 2068-69.  Put another way, the "defendant [must] 'show that there is

---

[23/]    Accord, e.g., Wiggins v. Smith, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535 (2003); Bell v. Miller, – F.3d –, 2007 WL 2469423 at *4 (2d Cir. Aug. 31, 2007); Henry v. Poole, 409 F.3d 48, 62-63 (2d Cir. 2005), cert. denied, 547 U.S. 1040, 126 S. Ct. 1622 (2006).

[24/]    Accord, e.g., Wiggins v. Smith, 539 U.S. at 521, 123 S. Ct. at 2535; Bell v. Cone, 535 U.S. 685, 695, 122 S. Ct. 1843, 1850 (2002); Henry v. Poole, 409 F.3d at 63.

[25/]    Accord, e.g., Bell v. Cone, 535 U.S. at 698, 122 S. Ct. at 1852; Bell v. Miller, 2007 WL 2469423 at *6; Henry v. Poole, 409 F.3d at 63; Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001).

a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Id. at 694, 104 S. Ct. at 2068.[26/]

The Supreme Court has counseled that these principles "do not establish mechanical rules."  Strickland v. Washington, 466 U.S. at 696, 104 S. Ct. at  2069.  The focus of the inquiry should be on the fundamental fairness of the trial and whether, despite the strong presumption of reliability, the result is unreliable because of a breakdown of the adversarial process.  Id.

Any counsel errors must be considered in the "aggregate" rather than in isolation, as the Supreme Court has directed courts "to look at the 'totality of the evidence before the judge or

---

[26/]    See also, e.g., Wiggins v. Smith, 539 U.S. at 534, 123 S. Ct. at 2542; Bell v. Cone, 535 U.S. at 695, 122 S. Ct. at 1850; Mosby v. Senkowski, 470 F.3d 515, 519 (2d Cir. 2006); Henry v. Poole, 409 F.3d at 63-64; Aparicio v. Artuz, 269 F.3d at 95; Sellan v. Kuhlman, 261 F.3d at 315; DeLuca v. Lord, 77 F.3d 578, 584 (2d Cir.), cert. denied, 519 U.S. 824, 117 S. Ct. 83 (1996).

"[A] reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland v. Washington, 466 U.S. at 694, 104 S. Ct. at 2068; accord, e.g., Wiggins v. Smith, 539 U.S. at 534, 123 S. Ct. at 2542.  The phrase "reasonable probability," despite its language, should not be confused with "probable" or "more likely than not." Strickler v. Greene, 527 U.S. 263, 289-91, 119 S. Ct. 1936, 1952-53 (1999); Kyles v. Whitley, 514 U.S. 419, 434, 115 S. Ct. 1555, 1565-66 (1995); Nix v. Whiteside, 475 U.S. 157, 175, 106 S. Ct. 988, 998 (1986) ("a defendant need not establish that the attorney's deficient performance more likely than not altered the outcome in order to establish prejudice under Strickland"); Strickland v. Washington, 466 U.S. at 694, 104 S. Ct. at 2068 ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.").  Rather, the phrase "reasonable probability" seems to describe a fairly low standard of probability, albeit somewhat more likely than a "reasonable possibility." Strickler v. Greene, 527 U.S. at 291, 119 S. Ct. at 1953; cf. id. at 297-301, 119 S. Ct. at 1955-58 (Souter, J., concurring & dissenting) (arguing that any difference between "reasonable probability" and "reasonable possibility" is "slight").

jury.'" Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001) (quoting Strickland v. Washington, 466

U.S. at 695-96, 104 S. Ct. at 2069); accord, e.g., Rodriguez v. Hoke, 928 F.2d 534, 538 (2d Cir.

1991).

   The Supreme Court also made clear that "there is no reason for a court deciding an

ineffective assistance claim . . . to address both components of the inquiry if the defendant makes

an insufficient showing on one." Strickland v. Washington, 466 U.S. at 697, 104 S. Ct. at 2069.[27]

   In addition, the Supreme Court has counseled that "strategic choices made after

thorough investigation of law and facts relevant to plausible options are virtually unchallengeable;

and strategic choices made after less than complete investigation are reasonable precisely to the

extent that reasonable professional judgments support the limitations on investigation. . . . In any

ineffectiveness case, a particular decision not to investigate must be directly assessed for

reasonableness in all the circumstances, applying a heavy measure of deference to counsel's

judgments." Strickland v. Washington, 466 U.S. at 690-91, 104 S. Ct. at 2066.[28]

---

[27] Accord, e.g., Smith v. Robbins, 528 U.S. 259, 286 n.14, 120 S. Ct. 746, 764 n.14 (2000).

[28] See also, e.g., Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S. Ct. 1, 4 (2003); Engle v. Isaac, 456 U.S. 107, 134, 102 S. Ct. 1558, 1575 (1982) ("We have long recognized . . . that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim."); Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998) ("In reviewing Strickland claims, courts are instructed to 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and that counsel's conduct was not the result of error but derived instead from trial strategy. We are also instructed, when reviewing decisions by counsel, not to 'second-guess reasonable professional judgments and impose on . . . counsel a duty to raise every "colorable" claim' on appeal.") (citations (continued...)

As the Second Circuit noted:  "The Strickland standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." Lindstadt v. Keane, 239 F.3d at 199; accord, e.g., Bell v. Miller, 2007 WL 2469423 at *4.

## B.    Strickland and the AEDPA Review Standard

For purposes of this Court's AEDPA analysis, "the Strickland standard . . . is the relevant 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Aparicio v. Artuz, 269 F.3d 78, 95 & n.8 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(d)(1)).[29/]  "For AEDPA purposes, a petitioner is not required to further demonstrate that his particular theory of ineffective assistance of counsel is also 'clearly established.'"  Aparicio v. Artuz, 269 F.3d at 95 n.8. "For [petitioner] to succeed, however, he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. . . . Rather, he must show that the [First Department] applied Strickland to the facts of his case in an objectively unreasonable manner."  Bell v. Cone, 535 U.S.

---

[28/]    (...continued)
omitted); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.) (a reviewing court "may not use hindsight to second-guess [counsel's] strategy choices"), cert. denied, 513 U.S. 820, 115 S. Ct. 81 (1994).

[29/]    See also, e.g., Wiggins v. Smith, 539 U.S. 510, 521-22, 123 S. Ct. 2527, 2535 (2003); Bell v. Cone, 535 U.S. 685, 698, 122 S. Ct. 1843, 1852 (2002); Mosby v. Senkowski, 470 F.3d 515, 518-19 (2d Cir. 2006); Sellan v. Kuhlman, 261 F.3d at 315.

at 698-99, 122 S. Ct. at 1852; <u>see also</u>, <u>e.g.</u>, <u>Yarborough</u> v. <u>Gentry</u>, 540 U.S. 1, 5, 124 S. Ct. 1, 4 (2003); <u>Mosby</u> v. <u>Senkowski</u>, 470 F.3d at 519.

> **C.**     **Rivera's Ineffective Assistance of Counsel Claim Should Be Denied Because Rivera's Counsel Was Not Ineffective For Failure To Preserve By Specific Objection The Legal Insufficiency Claim For The Crime Of Depraved Indifference Murder**

Rivera claims that he "was deprived of the effective assistance of counsel because of trial counsel's failure to preserve by specific objection the legal insufficiency claim for the crime of depraved indifference murder." (Dkt. No. 1: Pet. ¶ 13, incorporating Rivera 1st Dep't Br. at 21-23.) With respect to Rivera's objection to his conviction of depraved indifference murder, the First Department held that:

> Defendant's challenge to the sufficiency of the evidence establishing depraved indifference murder is unpreserved and we decline to review it in the interest of justice. Were we to review this claim, we would find that the jury could have reasonably concluded that defendant lacked homicidal intent, but instead acted under circumstances evincing a depraved indifference to human life when he impulsively began firing wildly in a small grocery store, endangering numerous persons.

<u>People</u> v. <u>Rivera</u>, 15 A.D.3d 247, 248, 789 N.Y.S.2d 158, 158-59 (1st Dep't), <u>appeal denied</u>, 5 N.Y.3d 768, 801 N.Y.S.2d 262 (2005).

New York Penal Law § 125.25 states that "[a] person is guilty of murder in the second degree when . . . [u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." Penal Law § 125.25(2). Here, the evidence showed that Rivera fired multiple shots inside a small bodega; police officers found five discharged shells and various bullet

fragments inside the bodega, as well as three bullet holes in different areas of the bodega. (See page 4 above.) The evidence at trial established that there were several employees and customers in the bodega at the time of the shooting. (See pages 4, 5-6 above.) Quinones heard shots from inside the bodega and witnessed Rivera exit the bodega with a gun in his hand and shoot Milan twice more while chasing him out on the street. (See page 3 above.) Lopez testified that Rivera came to his apartment directly after the shooting and stated that he "did something stupid," admitting to Lopez that he fired shots while in the store and while running out of the store. (See page 4 above.)

Rivera's conduct of shooting a gun in a small store where several people were present, as well as his shooting the gun out on the open street, sufficiently demonstrates the recklessness and depraved indifference to human life required by the Penal Law. As such, any claim regarding the sufficiency of the evidence of depraved indifference murder is meritless. See, e.g., People v. Castellano, 41 A.D.3d 184, 185, 837 N.Y.S.2d 643, 644 (1st Dep't 2007) ("The proof was also sufficient to establish the element of depraved indifference. The act of wildly flailing a knife at multiple persons, without intending to kill or injure, is, under the standards charged the jury, akin to the classic depraved indifference situations of firing a gun into a crowd or driving an automobile along a crowded sidewalk.") (citations omitted); People v. Carter, 40 A.D.3d 1310, 1311-12, 838 N.Y.S.2d 192, 194 (3d Dep't 2007) (Evidence was sufficient to convict defendant of depraved indifference murder where defendant shot "as many as eight shots," "wildly shooting toward several people" outside a bar, only four shots hit the victim, and the "remaining projectiles and the ricocheting bullets could just as easily have hit someone other than" the victim.); People v. Jean-

Baptiste, 38 A.D.3d 418, 421, 833 N.Y.S.2d 31, 34-35 (1st Dep't 2007) (Evidence was sufficient to convict defendant of depraved indifference murder where defendant brought a gun to a street brawl, and either discharged the gun into the crowd using hollow-point ammunition or purposely shot the victim with intent to cause serious physical injury while creating grave risk of death.); People v. Golden, 37 A.D.3d 972, 973, 829 N.Y.S.2d 758, 760 (3d Dep't 2007) ("[O]ur review of the record convinces us that there was legally sufficient evidence to establish defendant's recklessness and depraved indifference to human life.  Surely a jury was entitled to find that defendant's firing of a weapon into a darkened apartment where he should have perceived that one or more inhabitants were present was reckless conduct, and the jury likewise could infer from the evidence that defendant acted with an utter disregard for the value of human life – acting not because he intended harm, but because he simply didn't care whether grievous harm resulted or not.") (quotations & brackets omitted); People v. Campbell, 33 A.D.3d 716, 719, 826 N.Y.S.2d 267, 270-71 (2d Dep't 2006) (Evidence "was legally sufficient to establish the defendant's guilt of depraved indifference murder beyond a reasonable doubt" where "the defendant, after approaching the three men [during the day on a courtyard path between two apartment buildings] and having a brief conversation with [witness], pulled out a gun and fired it five times in the direction of the fleeing men.  Under these circumstances, this case fits into the narrow category of cases where depraved indifference murder properly applies" because "[a] rational jury could reasonably conclude that the defendant did not care whether harm would result when he commenced his shooting spree in the direction of the three fleeing men, and that this act was not just reckless, but evinced a depraved indifference to human

life."), appeal denied, 8 N.Y.3d 879, 832 N.Y.S.2d 491 (2007); People v. Summerville, 22 A.D.3d 692, 692, 802 N.Y.S.2d 508, 508-09 (2d Dep't) (Where "the defendant fired a gun on a public street in the direction of at least two individuals, and in close proximity to several others, [the evidence] was legally sufficient to establish that he acted with a 'depraved indifference to human life.'"), appeal denied, 6 N.Y.3d 759, 810 N.Y.S.2d 427 (2005); People v. Wilkens, 8 A.D.3d 1074, 1075, 778 N.Y.S.2d 252, 253 (4th Dep't) ("The evidence established that, after an argument with the victim over which team would play the next basketball game, defendant left the community center but returned 10 minutes later with a gun. Defendant testified that he brought the gun only to scare the victim, but the gun went off after an argument with the victim, resulting in the death of the victim." "Although the evidence at trial could support the conclusion that defendant intended to kill the victim, it also could support the conclusion that, under circumstances evincing a depraved indifference to human life, defendant recklessly engaged in conduct that created a grave risk of death to another person."), appeal denied, 3 N.Y.3d 683, 784 N.Y.S.2d 21 (2004); People v. McCarthy, 293 A.D.2d 490, 491, 740 N.Y.S.2d 381, 382 (2d Dep't) ("[T]he victim . . . was standing by his car, confronting [robber] who was attempting to steal the car's radio. The defendant, who accompanied [robber], engaged in a gun battle with [victim] while running down the street, thereby exposing bystanders to the risk of harm. In the course of the gun battle, the defendant shot [victim] in the face, causing his death, and fled the scene. These facts indicate that the defendant acted with depraved indifference to human life in causing [victim's] death."), appeal denied, 98 N.Y.2d 711, 749 N.Y.S.2d 9 (2002); People v. Burgos-Santos, 287 A.D.2d 338, 338, 731 N.Y.S.2d 182, 183 (1st

43

Dep't 2001) ("The verdict was based on legally sufficient evidence and was not against the weight of the evidence. . . . The evidence established that defendant acted with depraved indifference to human life when he retrieved a gun from his car, aimed it at three unarmed men, two of whom were fleeing, and, despite the presence in close proximity of numerous other persons, fired several shots, causing the victim's death."), aff'd, 98 N.Y.2d 226, 236, 746 N.Y.S.2d 422, 428 (2002).

Because Rivera's sufficiency of the evidence claim is meritless, counsel cannot be found to be ineffective for failing to preserve a meritless claim.  See, e.g., United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance."), cert. denied, 531 U.S. 811, 121 S. Ct. 33 (2000); United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir.) ("the failure to make a meritless argument does not rise to the level of ineffective assistance"), cert. denied, 516 U.S. 927, 116 S. Ct. 330 (1995); United States v. Moland, No. 94-1032, 39 F.3d 1193 (table), 1994 WL 600985 at *2 (10th Cir. Nov. 3, 1994) ("counsel cannot be ineffective for not pursuing a strategy doomed to failure"); Cuevas v. Henderson, 801 F.2d 586, 592 (2d Cir. 1986), cert. denied, 480 U.S. 908, 107 S. Ct. 1354 (1987); Hardison v. Artus, 06 Civ. 0322, 2006 WL 1330064 at *10 n.27 (S.D.N.Y. May 16, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 1763678 (S.D.N.Y. June 23, 2006); James v. Artus, 03 Civ. 7612, 2005 WL 859245 at *16 (S.D.N.Y. Apr. 15, 2005) (Peck, M.J.); McPherson v. Greiner, 02 Civ. 2726, 2003 WL 22405449 at *22 (S.D.N.Y. Oct. 22, 2003) (Peck, M.J.); Quinones v. Miller, 01 Civ. 10752, 2003 WL 21276429 at *53 (S.D.N.Y. June 3, 2003) (Peck, M.J.); Rosario v. Bennett, 01 Civ. 7142, 2002 WL 31852827 at *35 & n.61 (S.D.N.Y Dec. 20, 2002) (Peck, M.J.) ("counsel cannot be faulted for failure

to make a meritless objection"); Ennis v. Walker, 00 Civ. 2875, 2001 WL 409530 at *22 (S.D.N.Y. Apr. 6, 2001) (Peck, M.J.) ("Because there would have been no merit to any of the objections [petitioner] contends defense counsel should have made, counsel's failure to object does not constitute ineffective assistance."); Franza v. Stinson, 58 F. Supp. 2d 124, 148 (S.D.N.Y. 1999) (Kaplan, D.J. & Peck, M.J.).[30/]

Because Rivera's sufficiency of the evidence claim is meritless, he cannot show prejudice under Strickland's second prong. Consequently, Rivera's ineffective assistance of counsel habeas claim should be DENIED.

---

[30/]    See also, e.g., Duncan v. Griener, 97 Civ. 8754, 1999 WL 20890 at *10 (S.D.N.Y. Jan. 19, 1999) (since trial counsel's objection would have been fruitless, "the failure to so object is not evidence of ineffective assistance of counsel"); Perez v. United States, 89 CR 800, 96 Civ. 7702, 1997 WL 661426 at *4 (S.D.N.Y. Oct. 23, 1997) ("Defense counsel's failure to object, then, cannot have resulted in actual prejudice to petitioner, as the objection would have been meritless."); United States v. Corcoran, 855 F. Supp. 1359, 1368 (E.D.N.Y. 1994) (where identification found not improper, "counsel's failure to pursue the motion to suppress the in-court identification clearly did not deny defendant the effective assistance of counsel."), aff'd, 100 F.3d 944 (2d Cir.), cert. denied, 517 U.S. 1228, 116 S. Ct. 1864 (1996); Arce v. Smith, 710 F. Supp. 920, 926-27 (S.D.N.Y.) (inasmuch as there was no constitutional error or reversible error under state law, petitioner was not prejudiced by counsel's failure to object and counsel was not ineffective), aff'd, 889 F.2d 1271 (2d Cir. 1989), cert. denied, 495 U.S. 937, 110 S. Ct. 2185 (1990).

## IV. RIVERA'S HABEAS CLAIM THAT THE PROSECUTOR'S SUMMATION DEPRIVED HIM OF A FAIR TRIAL IS WITHOUT MERIT

Rivera's third habeas claim asserts that "the cumulative effect of improper statements by the prosecutor in her opening statement and summation, deprived [Rivera] of his constitutional right to a fair trial." (Dkt. No. 1: Pet. ¶ 13, incorporating Rivera 1st Dep't Br. at 17-21.) The First Department held regarding this claim: "[w]e have considered and rejected defendant's remaining claims." People v. Rivera, 15 A.D.3d 247, 248, 789 N.Y.S.2d 158, 158-59 (1st Dep't), appeal denied 5 N.Y.3d 768, 801 N.Y.S.2d 262 (2005).

### A.    Federal Habeas Review Standard for Prosecutorial Misconduct Claims[31]

Prosecutorial misconduct violates a defendant's due process rights only when it is of "sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 483 U.S. 756, 765, 107 S. Ct. 3102, 3109 (1987); accord, e.g., United States v. Best, 142 Fed. Appx. 500, 501 (2d Cir.) ("We must examine whether the prosecutor's actions 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"), cert. denied, 126 S. Ct. 770

---

[31]    For additional decisions by this Judge discussing the federal habeas review standard for prosecutorial misconduct claims in language substantially similar to that in this entire section of this Report and Recommendation, see, e.g., Murray v. Greene, 06 Civ. 3677, 2006 WL 3751294 at *17 n.36 (S.D.N.Y. Dec. 21, 2006) (Peck, M.J.); Rosario v. Walsh, 05 Civ. 2684, 2006 WL 1431410 at *21-22 (S.D.N.Y. May 25, 2006), report & rec. adopted, 2006 WL 1880958 (S.D.N.Y. July 5, 2006); Hardison v. Artus, 06 Civ. 0322, 2006 WL 1330064 at *10-11 (S.D.N.Y. May 16, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 1763678 (S.D.N.Y. June 23, 2006); Murray v. Schultz, 05 Civ. 0472, 2005 WL 1523504 at *15 (S.D.N.Y. June 29, 2005) (Peck, M.J.); Roman v. Filion, 04 Civ. 8022, 2005 WL 1383167 at *17-18 (S.D.N.Y. Jun. 10, 2005) (Peck, M.J.); James v. Artus, 03 Civ. 7612, 2005 WL 859245 at *11 (S.D.N.Y. Apr. 15, 2005) (Peck, M.J.); Smalls v. McGinnis, 04 Civ. 0301, 2004 WL 1774578 at *20 (S.D.N.Y. Aug. 10, 2004) (Peck, M.J.) (citing my prior cases).

46

(2005); United States v. Muja, 102 Fed. Appx. 212, 216 (2d Cir. 2004) ("'It is a rare case in which improper comments in a prosecutor's summation are so prejudicial that a new trial is required.'");

United States v. Coriaty, 300 F.3d 244, 255 (2d Cir. 2002) (Even on direct federal appeal, "[b]efore a conviction will be reversed, a prosecutor's comments upon summation must 'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.' The defendant must point to 'egregious misconduct.'") (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 647, 94 S. Ct. 1868, 1871, 1873 (1974)); United States v. Elias, 285 F.3d 183, 190 (2d Cir.) ("To warrant reversal, the prosecutorial misconduct must cause the defendant substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process.") (internal quotations omitted), cert. denied, 537 U.S. 988, 123 S. Ct. 430 (2002).[32]

Stated another way, "the law is settled that 'federal habeas relief is not available on the basis of improper prosecutorial statements at trial unless the errors, in context of the summation as a whole, were so fundamentally unfair as to deny petitioner a fair trial.'" Tejeda v. Senkowski,

---

[32]    See also, e.g., United States v. McCarthy, 54 F.3d 51, 55 (2d Cir. 1995), cert. denied, 516 U.S. 880, 116 S. Ct. 214 (1995); Blissett v. LeFevre, 924 F.2d 434, 440 (2d Cir.), cert. denied, 502 U.S. 852, 112 S. Ct. 158 (1991); Brown v. Schultz, 03 Civ. 3320, 2006 WL 156983 at *10 (S.D.N.Y. Jan. 18, 2006); Trinidad v. Annetts, 04 Civ. 9685, 2005 WL 2792398 at *4-5 (S.D.N.Y. Oct. 26, 2005); Readdon v. Senkowski, 96 Civ. 4722, 1998 WL 720682 at *4 (S.D.N.Y. Oct. 13, 1998); Hurd v. Keane, 97 Civ. 2991, 1997 WL 582825 at *4 (S.D.N.Y. Sept. 19, 1997); Beverly v. Walker, 899 F. Supp. 900, 911 (N.D.N.Y. 1995), aff'd, 118 F.3d 900 (2d Cir.), cert. denied, 522 U.S. 883, 118 S. Ct. 211 (1997); Washington v. Walker, 89 Civ. 7841, 1994 WL 391947 at *3 (S.D.N.Y. July 28, 1994) ("Even where a prosecutor's remarks are improper, 'constitutional error occurs only when the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair.'") (quoting Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990) (quoting Garofolo v. Coomb, 804 F.2d 201, 206 (2d Cir. 1986))).

92 Civ. 3012, 1993 WL 213036 at *3 (S.D.N.Y. June 16, 1993), aff'd mem., 23 F.3d 397 (2d Cir.),

cert. denied, 513 U.S. 887, 115 S. Ct. 230 (1994).[33]

       To properly evaluate the prosecution's actions, the alleged misdeeds must be placed

in context, and "[t]he severity of the misconduct, curative measures, and the certainty of conviction

absent the misconduct are all relevant to the inquiry." Blissett v. LeFevre, 924 F.2d at 440; accord,

e.g., Greer v. Miller, 483 U.S. at 766, 107 S. Ct. at 3109 ("it is important 'as an initial matter to place

th[e] remar[k] in context'"); United States v. Best, 142 Fed. Appx. at 501; United States v.

McCarthy, 54 F.3d at 55; United States v. Friedman, 909 F.2d 705, 709 (2d Cir. 1990); United States

v. Biasucci, 786 F.2d 504, 514 (2d Cir.), cert. denied, 479 U.S. 827, 107 S. Ct. 104 (1986).[34]

### B.    Application of the Standard to Rivera's Prosecutorial Misconduct Claim

       Rivera first challenges the prosecutor's comment during her opening statement that

the evidence would show that after the shooting, Rivera called the bodega and was told "'don't come

around. Don't call. The place is swarming with police.'" (See page 2 above; Dkt. No. 1: Pet. ¶ 13,

incorporating Rivera 1st Dep't Br. at 25.) Rivera argues that "[t]his unattributed hearsay statement

---

[33]    Accord, e.g., Franza v. Stinson, 58 F. Supp. 2d 124, 149 (S.D.N.Y. 1999) (Kaplan, D.J. & Peck, M.J.); see also, e.g., Donnelly v. DeChristoforo, 416 U.S. 637, 647, 94 S. Ct. 1868, 1873 (1974); Floyd v. Meachum, 907 F.2d at 355 (quoting Garofolo v. Coomb, 804 F.2d at 205); Edmonds v. McGinnis, 11 F. Supp. 2d 427, 437 (S.D.N.Y. 1998); Gaiter v. Lord, 917 F. Supp. 145, 153 (E.D.N.Y. 1996); Jones v. Kuhlmann, 93 Civ. 5963, 1995 WL 733649 at *4 (S.D.N.Y. Dec. 12, 1995).

[34]    See also, e.g., Brown v. Schultz, 2006 WL 156983 at *10; Trinidad v. Annetts, 2005 WL 2792398 at *5; Hurd v. Keane, 1997 WL 582825 at *4; Beverly v. Walker, 899 F. Supp. at 911.

only served to create the unmistakable impression in the mind of the jury that there was someone at the store who could have identified [Rivera] as the shooter." (Rivera 1st Dep't Br. at 25.) Rivera claims that the effect of the prosecutor's statement was to bolster Quinones' testimony regarding his identification of Rivera during the shooting. (Rivera 1st Dep't Br. at 25.)

Rivera also argues that the prosecutor bolstered Quinones' testimony further when she said during summation: "and what's [Quinones'] motive to lie? He says I know him. We never had a problem, and I saw him come out. I saw him come out. Combine that with Miguel Lopez's testimony and there is no evidence that they are in any way connected in a conspiracy." (Rivera 1st Dep't Br. at 25-26; Tr. 875-76.) Rivera additionally notes that this comment is in direct conflict with information that was not introduced at trial but that the prosecutor knew about, that there allegedly was "'bad blood'" between Quinones and Rivera because two months before the shooting at the bodega, Rivera had stabbed Quinones because Quinones had refused to sell drugs for him. (Rivera 1st Dep't Br. at 26.)

Rivera also argues that during summation, the prosecutor "sought to dilute its burden of proof by telling the jury that the defense had conceded certain facts," such as that the victim died on April 21, 2001, that the cause of death was gunshot wounds, that the gun in evidence at trial was the murder weapon, and that the murder occurred in and around 1105 Tinton Avenue. (Rivera 1st Dep't Br. at 27-28.) The prosecutor also mentioned Lopez's testimony, stating to the jury that Rivera said to Lopez: "'I just did something stupid. I just did something dumb. Ladies and gentlemen, I will submit to you that the prosecution and the defense agree on one thing: it was something stupid

and it was dumb.'" (Rivera 1st Dep't Br. at 28; Tr. 857-58.)   Rivera claims that by all of these statements, the prosecutor "was attempting to convince the jury that [Rivera's] trial counsel agreed with the accuracy of crucial facts that the People had presented." (Rivera 1st Dep't Br. at 29.)  Rivera argues that all of these remarks by the prosecutor prejudiced the jury against Rivera and shifted the burden of proof.  (Rivera 1st Dep't Br. at 29.)

As to the comments during the prosecutor's opening statement and summation regarding Quinones' and Lopez's testimony, the prosecutor merely stated the evidence that she expected to (and did) elicit at trial, and in summation fairly characterized the evidence that came out during trial.  Even if this were bolstering, the rule forbidding "bolstering" is a state law standard, and a claim that a prosecutor's statements constituted improper bolstering does not present a federal constitutional claim cognizable on federal habeas review.  E.g., Murray v. Schultz, 05 Civ. 0472, 2005 WL 1523504 at *16 (S.D.N.Y. June 29, 2005) (Peck, M.J.); Roman v. Filion, 04 Civ. 8022, 2005 WL 1383167 at *25 n.41 (S.D.N.Y. June 10, 2005) (Peck, M.J.); Kanani v. Phillips, 03 Civ. 2534, 2004 WL 2296128 at *21 (S.D.N.Y. Oct. 13, 2004) (Peck, M.J.), report & rec. adopted, 2005 WL 2431416 (S.D.N.Y. Oct. 3, 2005); Peakes v. Spitzer, 04 Civ. 1342, 2004 WL 1366056 at *15 (S.D.N.Y. June 16, 2004) (Peck, M.J.), report & rec. adopted, 2004 WL 1656568 (S.D.N.Y. Jul. 23, 2004) (Berman, D.J.); Hernandez v. Filion, 03 Civ. 6989, 2004 WL 286107 at *12 (S.D.N.Y. Feb. 13, 2004) (Peck, M.J.), report & rec. adopted, 2004 WL 555722 (S.D.N.Y. Mar. 19, 2004) (Berman, D.J.).[35/]

---

[35/]    See also, e.g., Quinones v. Miller, 01 Civ. 10752, 2003 WL 21276429 at *49 n.77 (S.D.N.Y.
(continued...)

Additionally, the prosecutor made the comments about Quinones in response to defense counsel's argument during summation that Quinones needed to implicate Rivera because of his own problems with the police.  (See Defense Summation: Tr. 833-35.)  The prosecutor's comments about Quinones were a proper response to defense counsel's attack on his credibility. See, e.g., Rosario v. Walsh, 05 Civ. 2684, 2006 WL 1431410 at *22 (S.D.N.Y. May 25, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 1880958 (S.D.N.Y. July 5, 2006); Hardison v. Artus, 06 Civ. 0322, 2006 WL 1330064 at *11-12 (S.D.N.Y. May 16, 2006) (Peck, M.J.) (Prosecutor's remarks during summation that tended to shift the burden were a "fair response to the defense counsel's summation in which he focused on impeaching [the prosecution witness'] credibility and the reliability of [the prosecution witness'] in-court identification of" the defendant.), report & rec. adopted, 2006 WL 1763678 (S.D.N.Y. June 23, 2006); Roman v. Filion, 04 Civ. 8022, 2005 WL 1383167 at *18 (S.D.N.Y. June 10, 2005) (Peck, M.J.) ("Under New York law, statements during summation are permissible if they constitute a 'fair comment on the evidence' at trial and reasonable inference therefrom, or a 'fair response to remarks made by the defense counsel during summation.'")

---

35/    (...continued)
June 3, 2003) (Peck, M.J.) ("Bolstering is generally not a cognizable federal claim."), report & rec. adopted, 2005 WL 730171 (S.D.N.Y. Mar. 31, 2005); Bailey v. People of State of New York, 01 Civ. 1179, 2001 WL 640803 at *8 (S.D.N.Y. June 8, 2001) (Peck, M.J.) (& cases cited therein); Diaz v. Greiner, 110 F. Supp. 2d 225, 235 (S.D.N.Y. 2000) ("Bolstering claims have been (expressly) held not to be cognizable on federal habeas review."); Mendez v. Artuz, 98 Civ. 2652, 2000 WL 722613 at *32 n.23 (S.D.N.Y. June 6, 2000) (Peck, M.J.); Benitez v. Senkowski, 97 Civ. 7819, 1998 WL 668079 at *5 (S.D.N.Y. Sept. 17, 1998) (Cote, D.J. & Peck, M.J.); Orr v. Schaeffer, 460 F. Supp. 964, 967 (S.D.N.Y. 1978) (Weinfeld, D.J.) ("This Circuit has never regarded the practice [of bolstering] as inimical to trial fairness.").

(citing N.Y. cases); <u>Montero</u> v. <u>Sabourin</u>, 02 Civ. 8666, 2003 WL 21012072 at *7 (S.D.N.Y. May 5,

2003) (prosecutor's response during summation to defense counsel's attack on prosecution witnesses'

credibility was not held to be improper shifting of burden) (citing cases); <u>Everett</u> v. <u>Fischer</u>, No. 00-

CV-6300, 2002 WL 1447487 at *3 (E.D.N.Y. July 3, 2002) ("The prosecutor's statement that defense

counsel's attacks on the police officers was an attempt to divert attention away from the central

testimony in the case, that of [a prosecution witness], also was a proper response to defense counsel's

attack on the police officer's credibility.").[36/]  The prosecutor's statement during summation was a

proper response to the argument advanced in defense counsel's summations and does not provide a

basis for habeas relief.

      Even if any of the prosecutor's comments were improper, the instructions that the trial

judge gave to the jury about the burden of proof and the presumption of innocence were sufficient

to cure the effects of the comments.  <u>See</u>, <u>e.g.</u>, <u>Chalmers</u> v. <u>Mitchell</u>, 73 F.3d 1262, 1271 (2d Cir.)

(trial court's instruction on the burden of proof, which included language that the presumption of

innocence remains with the defendant unless the jury finds the People proved their case beyond a

reasonable doubt and that the burden of proof never shifts to the defendant, "likely corrected any

---

[36/]     <u>See also</u>, <u>e.g.</u>, <u>People</u> v. <u>Seit</u>, 86 N.Y.2d 92, 99, 629 N.Y.S.2d 998, 1001 (1995) (Prosecutor's comments did not warrant reversal when made in "fair response to defense counsel's summation"); <u>People</u> v. <u>Halm</u>, 81 N.Y.2d 819, 821, 595 N.Y.S.2d 380, 381 (1993) ("[T]he prosecutor's closing statement must be evaluated in light of the defense summation, which put into issue the complainants' character and credibility and justified the People's response."); <u>People</u> v. <u>Vasquez</u>, 28 A.D.3d 1100, 1101, 813 N.Y.S.2d 613, 614 (4th Dep't 2006); <u>People</u> v. <u>Bello</u>, 24 A.D.3d 236, 237, 808 N.Y.S.2d 164, 166 (1st Dep't 2005), <u>appeal denied</u>, 6 N.Y.3d 892, 817 N.Y.S.2d 627 (2006); <u>People</u> v. <u>Parrella</u>, 4 A.D.3d 132, 132, 771 N.Y.S.2d 511, 512 (1st Dep't), <u>appeal denied</u>, 2 N.Y.3d 804, 781 N.Y.S.2d 303 (2004).

misperception the jury may have held" as a result of the prosecution's comments.), cert. denied, 519

U.S. 834, 117 S. Ct. 106 (1996); Rosario v. Walsh, 2006 WL 1431410 at *23; Hardison v. Artus,

2006 WL 1330064 at *12 ("The trial court's charge to the jury on the burden of proof adequately

addressed any prejudice that may have resulted from the prosecutor's summation."); Perez v. Fischer,

02 Civ. 3443, 2006 WL 510513 at *10 (S.D.N.Y. Mar. 1, 2006) ("Although the prosecution made

two arguably improper comments during its closing arguments [that suggested burden should shift

to defendant], the severity of such misconduct was limited as the Court took prompt curative

measures to ensure the jury disregarded the comments."); Peakes v. Spitzer, 04 Civ. 1342, 2004 WL

1366056 at *18 & n.29 (S.D.N.Y. June 16, 2004) (Peck, M.J.) ("[I]mmediately following the

prosecutor's summation, the judge's charge informed the jury that the 'burden [of proof] remains

upon the prosecution throughout the trial and never shifts to the defendant' and that '[n]o defendant

is required to prove his innocence.'"), report & rec. adopted, 2004 WL 1656568 (S.D.N.Y. July 23,

2004) (Berman, D.J.); Lebron v. Girdich, 03 Civ. 2765, 2003 WL 22888809 at *3 (S.D.N.Y. Dec.

5, 2003) (prosecutor's comments during summation regarding petitioner's decision not to testify did

not shift the burden of proof to petitioner, and in any event, court's instruction to jury regarding the

prosecutor's burden of proof addressed "any point on which [prosecutor's comments] might be found

objectionable."); Pimentel v. Walsh, 02 Civ. 570, 2003 WL 22493451 at *7 (S.D.N.Y. Nov. 4, 2003)

("the court's instructions to the jury were sufficient to address any potential confusion [regarding

shifting of the burden] arising from the prosecutor's comments."), modified on other grounds, 2003

WL 22671464 (S.D.N.Y. Nov. 12, 2003); Trueluck v. Phillips, 03 Civ. 0904, 2003 WL 22390113

at *5 (S.D.N.Y. Oct. 20, 2003) ("The court's clear instruction that the burden on the prosecutor never

shifts prevented any misunderstanding of the prosecutor's summation and rendered unnecessary any further corrective charge."); <u>Crawford</u> v. <u>Keane</u>, 00 Civ. 6672, 2001 WL 913947 at *6 (S.D.N.Y. Aug. 14, 2001) ("[T]he jury charge cured any effect that inappropriate prosecutorial comments might have had on the jury. . . . Here, the charge stated that the burden of proof 'never shifts from the People to a defendant' but 'remains on people throughout the trial and until the jury has reported its verdict.'").

The Court cannot say that the First Department's decision on this issue was contrary to or an unreasonable application of Supreme Court law.  Rivera's habeas claim, that the prosecutor's summation deprived him of a fair trial, should be <u>DENIED</u>.

## V.    RIVERA'S HABEAS CLAIM THAT THE TRIAL COURT DID NOT EMPLOY A PROPOSED SECTION OF THE CRIMINAL PROCEDURAL LAW IS WITHOUT MERIT

Rivera claims that "the lower court inadequately rejected [that] the new section propos[ed] [by] the Advisory Committee [that] cover[s] paragraph[s] (B) and (C) of subdivision two of Section 440.10 of the Criminal Procedural Law [should] be amended to provide that ineffective assistance of counsel claims be exempt from procedural bar to collateral review." (Dkt. No. 1: Pet. ¶ 13.)  This claim does not constitute a basis for habeas relief.  The proposed C.P.L. amendment that Rivera mentions was never adopted, and therefore does not constitute New York Law.  It is up to the legislature, not the courts, to amend the C.P.L.

Rivera's habeas claim about the "proposed" C.P.L. provision is entirely without merit, and therefore should be <u>DENIED</u>.

## VI.    RIVERA'S APPLICATION TO AMEND HIS HABEAS PETITION SHOULD BE DENIED

Rivera has sought permission to amend his habeas petition pursuant to Fed. R. Civ. P. 15(c). (Dkt. No. 10: Rivera Motion to Amend). Rivera requested that this Court allow him to add a claim Rivera advanced in his second C.P.L. § 440 motion, namely, that "trial counsel failed to conduct a thorough investigation [into whether] petitioner was shot eleven months prior to the instant offense, by an individual who wore a jacket similar to the one worn by the victim." (Rivera Motion to Amend at 3.) This claim remains pending before the First Department and thus is unexhausted. (See Rivera Motion to Amend at 3.) Rivera also requests that this Court grant a stay and abeyance of his federal habeas petition until his state remedies are exhausted on this new claim. (Rivera Motion to Amend at 4.) The State opposes Rivera's motion to amend and stay the petition. (Dkt. No. 11: 7/25/07 Marinaccio Aff. & Br.)

### A.    Standard For Amending A Habeas Petition By Adding An Unexhausted Claim

A habeas petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Rule 15 of the Federal Rules of Civil Procedure governs a motion to amend a habeas petition. See, e.g., Littlejohn v. Artuz, 271 F.3d 360, 363 (2d Cir. 2001). Absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment," leave to amend a pleading should be "'freely given.'" Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962); see also, e.g., Littlejohn v. Artuz, 271 F.3d at 363. However, where "there is no merit in the

55

proposed amendment[], leave to amend should be denied." Health-Chem Corp. v. Baker, 915 F.2d

805, 810 (2d Cir. 1990); see also, e.g., Jones v. N.Y. State Div. of Military & Naval Affairs, 166

F.3d 45, 50 (2d Cir. 1998).  In the habeas context, upon a motion to amend so as to include an

unexhausted claim, allowance of the amendment would be futile if the court also declined to use the

stay and abeyance procedure while the petitioner exhausts the claim in state court. See, e.g., Ramdeo

v. Phillips, No 04-CV-1157, 2006 WL 297462 at *4 (E.D.N.Y. Feb 8, 2006).

> The Supreme Court has addressed requests for stay and abeyance of habeas petitions:
>
> Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition.
>
> For these reasons, stay and abeyance should be available only in limited circumstances.  Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.  Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.  Cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

Rhines v. Weber, 544 U.S. 269, 277, 125 S. Ct. 1528, 1534-55 (2005) (citation omitted).

> After Rhines, some courts have found that a claim of ineffective assistance of counsel

satisfies the "good cause" requirement in the context of a stay and abeyance procedure.  See, e.g.,

Aessa v. Annetts, No. 06 CV 5830, 2006 WL 3780392 at *2 (E.D.N.Y. Dec. 21, 2006) (citing cases);

Ramchair v. Conway, No. 04 CV 4241, 2005 WL 2786975 at *17-18 (E.D.N.Y. Oct. 26, 2005).

However, whether Rivera's additional ineffective assistance of counsel claim satisfies the good cause requirement need not be determined if his claim is meritless.  See, e.g., Diaz v. Smith, 04 Civ. 1337, 2007 WL 946196 at *6, 14 (S.D.N.Y. Mar. 27, 2007); Wallace v. Artus, 05 Civ. 0567, 2006 WL 738154 at *4 (S.D.N.Y. Mar. 23, 2006).

Rivera claims that his trial counsel was ineffective because he "failed to conduct a thorough investigation [into whether] petitioner was shot eleven months prior to the instant offense, by an individual who wore a jacket similar to the one worn by the victim."  (Rivera Motion to Amend at 3.)  Rivera claims that his trial counsel should have pursued a justification defense:  Rivera felt that he needed to defend himself when he saw Milan wearing a similar leather jacket as the person who had shot him.  (Rivera 2d C.P.L. § 440 Motion.)  Aside from the fact that advancing a justification defense is inconsistent with the misidentification defense Rivera's counsel used at trial, Rivera's claim that his lawyer was ineffective because he did not investigate in order to advance a justification defense is meritless because even if the facts advanced by Rivera were true, they would not warrant a justification defense under New York law.

**B.    The Justification Defense Under New York Law**[37]

Penal Law § 35.15 provides that a person is justified in using physical force in self-defense under the following circumstances:

---

[37]    For additional decisions by this Judge discussing the justification defense under New York law in language substantially similar to that in this entire section of this Report and Recommendation, see Bryant v. Fischer, 05 Civ. 0437, 2005 WL 3418282 at *14-17 (S.D.N.Y. Dec. 14, 2005) (Peck, M.J.); Thomas v. Duncan, 01 Civ. 6791, 2001 WL 1636974 at *11 (S.D.N.Y. Dec. 21, 2001) (Peck, M.J.).

> 1.  A person may, subject to the provisions of subdivision two, use physical force upon another person when and to the extent he . . . reasonably believes such to be necessary to defend himself . . . or a third person from what he . . . reasonably believes to be the use or imminent use of unlawful physical force by such other person, unless:
>
>> (a) The latter's conduct was provoked by the actor himself with intent to cause physical injury to another person; or
>>
>> (b) The actor was the initial aggressor; except that in such case the use of physical force is nevertheless justifiable if the actor has withdrawn from the encounter and effectively communicated such withdrawal to such other person but the latter persists in continuing the incident by the use or threatened imminent use of unlawful physical force . . . .
>
> 2.  A person may not use deadly physical force upon another person under circumstances specified in subdivision one unless:
>
>> (a) The actor reasonably believes that such other person is using or about to use deadly physical force.  Even in such case, however, the actor may not use deadly physical force if he . . . knows that with complete personal safety, to oneself and others he . . . may avoid the necessity of so doing by retreating . . .

Penal Law § 35.15 (emphasis added).  The term "[d]eadly physical force" is defined as "physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury."  Penal Law § 10.00(11).

"Under New York law justification is a defense, not an affirmative defense; therefore, when the defense is raised on a proper evidentiary record, the People bear the burden of disproving it beyond a reasonable doubt."  Davis v. Strack, 270 F.3d 111, 124 (2d Cir. 2001); accord, Jackson v. Edwards, 404 F.3d 612, 622 (2d Cir. 2005).[38]  "A justification charge is warranted, 'if on any

---

[38]    See, e.g., In re Y.K., 87 N.Y.2d 430, 433, 639 N.Y.S.2d 1001, 1003 (1996); People v.
(continued...)

reasonable view of the evidence, the fact finder might have decided that defendant's actions were justified.'" Jackson v. Edwards, 404 F.3d at 622 (quoting People v. Padgett, 60 N.Y.2d 142, 145, 468 N.Y.S. 854 (1983)). "The New York Court of Appeals has 'rejected a restrictive application of the defense.'" Jackson v. Edwards, 404 F.3d at 622 (quoting People v. McManus, 67 N.Y.2d at 549, 505 N.Y.S.2d at 46).

"Under New York law, in determining whether the evidence warrants a justification charge, the court must assess the record in the light most favorable to the defendant." Davis v. Strack, 270 F.3d at 124-25; accord, e.g., Jackson v. Edwards, 404 F.3d at 622.[39/] "When evidence at trial viewed in the light most favorable to the accused, sufficiently supports a claimed [justification] defense, the court should instruct the jury as to the defense, and must when so requested. . . . As a corollary, when no reasonable view of the evidence would support a finding of

---

[38/]   (...continued)
McManus, 67 N.Y.2d 541, 546-27, 505 N.Y.S.2d 43, 46 (1986); People v. Steele, 26 N.Y.2d 526, 528, 311 N.Y.S.2d 889, 891 (1970); In re Ismael S., 213 A.D.2d 169, 171-72, 623 N.Y.S.2d 571, 573 (1st Dep't 1995); People v. Veitia, 171 A.D.2d 461, 461, 566 N.Y.S.2d 868, 868 (1st Dep't), appeal denied, 78 N.Y.2d 976, 574 N.Y.S.2d 956 (1991); People v. Jackson, 154 A.D.2d 930, 930, 547 N.Y.S.2d 164, 164 (4th Dep't), appeal denied, 74 N.Y.2d 949, 550 N.Y.S.2d 284 (1989), error coram nobis denied mem., 213 A.D.2d 1085, 625 N.Y.S.2d 998 (4th Dep't 1995); William Donnino, "Practice Commentary" to Penal Law Article 35, at p. 128 (McKinney's 1998); see also, e.g., Tate v. Wood, 963 F.2d 20, 23 (2d Cir. 1992); Blazic v. Henderson, 900 F.2d 534, 542 (2d Cir. 1990).

[39/]   See, e.g., People v. Magliato, 68 N.Y.2d 24, 29, 505 N.Y.S.2d 836, 840 (1986); People v. McManus, 67 N.Y.2d at 549, 505 N.Y.S.2d at 48; People v. Padgett, 60 N.Y.2d at 144, 468 N.Y.S. at 856; People v. Watts, 57 N.Y.2d 299, 301, 456 N.Y.S.2d 677, 678 (1982); People v. Steele, 26 N.Y.2d at 529, 311 N.Y.S.2d at 891-92; People v. Vecchio, 240 A.D.2d 854, 855, 658 N.Y.S.2d 720, 721 (3d Dep't 1997); People v. Rivera, 138 A.D.2d 169, 174, 530 N.Y.S.2d 802, 805 (1st Dep't), appeal denied, 72 N.Y.2d 923, 532 N.Y.S.2d 857 (1988).

the tendered defense, the court is under no obligation to submit the question to the jury." People v.

Watts, 57 N.Y.2d at 301, 456 N.Y.S.2d at 678; see also, e.g., People v. McManus, 67 N.Y.2d at 549,

505 N.Y.S.2d at 48; People v. Padgett, 60 N.Y.2d at 144-45, 468 N.Y.S.2d at 856.

In In re Y.K., 87 N.Y.2d 430, 639 N.Y.S.2d 1001, the New York Court of Appeals

explained that Penal Law § 35.15 imposes a three part test to determine whether the use of deadly

physical force was justified:  first, whether defendant subjectively believed deadly physical force was

necessary; second, whether this belief was objectively reasonable; and third, whether defendant could

have retreated with safety:

> In People v. Goetz, [68 N.Y.2d 96, 115, 506 N.Y.S.2d 18, 29-30 (1986)] we
> explained that the justification statute imposes a two-part test which involves both
> subjective and objective components.  When a defendant claims the use of force was
> justified, the fact finder must first determine if defendant believed physical force (or
> deadly physical force) was necessary to defend against the imminent use of physical
> force (or deadly physical force).  That is the subjective component.  If the People fail
> to disprove defendant believed physical force was necessary, the fact finder must next
> consider whether defendant's belief was reasonable, that is, whether a reasonable
> person would have held that belief under the circumstances which existed.  It is not
> enough that the defendant believed that the use of force was necessary under the
> circumstances;  his reactions must be those of a reasonable person similarly
> confronted.  That is the objective component.
>
> If the case involves the use of deadly physical force and the fact finder
> determines that the use of such force was subjectively and objectively reasonable
> under the circumstances, then the fact finder must determine whether defendant could
> retreat with safety.  If a defendant confronted with deadly physical force knows
> retreat can be made with complete safety and fails to do so, the defense is lost.

In re Y.K., 87 N.Y.2d at 433-34, 639 N.Y.S.2d at 1003 (citation omitted); accord, e.g., Jackson v.

Edwards, 404 F.3d at 623 ("The leading New York cases construing the justification defense

establish a subjective and an objective component:  The fact-finder must determine that the

defendant believed deadly physical force was necessary and that a reasonable person would have believed the use of deadly physical force was necessary under the same circumstances. New York law also imposes a duty to retreat in some circumstances: If a defendant who is confronted with deadly physical force knows he can retreat with complete safety but fails to do so, the justification defense is lost.") (citations omitted).[40/]

Under New York law, reasonableness is determined based on the circumstances facing the defendant, including his knowledge of the victim's violent nature. As the New York Court of Appeals explained:

> Evidence that the defendant knew of prior acts of violence by the [victim] could help establish his requisite beliefs [i.e., subjective belief that he faced imminent harm]. Moreover, such knowledge would also be relevant on the issue of [objective] reasonableness, as the jury must consider the circumstances a defendant found himself in, which would include any relevant knowledge of the nature of persons confronting him.

---

[40/]    See, e.g., People v. Wesley, 76 N.Y.2d 555, 559, 561 N.Y.S.2d 707, 709-10 (1990); People v. Snell, 256 A.D.2d 480, 682 N.Y.S.2d 80, 80 (2d Dep't 1998), appeal denied, 93 N.Y.2d 979, 695 N.Y.S.2d 65 (1999); People v. Hayes, 248 A.D.2d 635, 635, 669 N.Y.S.2d 953, 954 (1998), error coram nobis denied, 294 A.D.2d 516, 742 N.Y.S.2d 863 (2d Dep't 2002); People v. Young, 240 A.D.2d 974, 976, 659 N.Y.S.2d 542, 543 (3d Dep't), appeal denied, 90 N.Y.2d 1015, 666 N.Y.S.2d 110 (1997); People v. Roldan, 222 A.D.2d 132, 138, 647 N.Y.S.2d 179, 183 (1st Dep't 1996); People v. Hall, 220 A.D.2d 615, 615, 633 N.Y.S.2d 39, 39-40 (1995), error coram nobis denied, 275 A.D.2d 469, 712 N.Y.S.2d 889 (2d Dep't 2000); People v. Counts, 214 A.D.2d 897, 898, 625 N.Y.S.2d 697, 698 (3d Dep't), appeal denied, 86 N.Y.2d 792, 800, 632 N.Y.S.2d 506, 514 (1995); In re Ismael S., 213 A.D.2d at 171, 623 N.Y.S.2d at 573; People v. Hagi, 169 A.D.2d 203, 210, 572 N.Y.S.2d 663, 667-68 (1st Dep't), appeal denied, 78 N.Y.2d 1011, 575 N.Y.S.2d 819 (1991); see also, e.g., Brown v. Artuz, 124 F.3d 73, 81 (2d Cir. 1997), cert. denied, 522 U.S. 1128, 118 S. Ct. 1077 (1998); Blazic v. Henderson, 900 F.2d at 540.

People v. Goetz, 68 N.Y.2d at 113, 506 N.Y.S.2d at 29.[41]/

As the Second Circuit has explained:

[Penal Law § 35.15] and the leading New York cases construing it, [In re] Y.K., 87 N.Y.2d 430, 639 N.Y.S.2d 1001 [(1996)]; People v. Goetz, 68 N.Y.2d 96, 506 N.Y.S.2d 18 (1986); [People v.] McManus, 67 N.Y.2d at 549, 505 N.Y.S.2d 43 [(1986)], for a person seeking to assert the defense of justification for his use of deadly force by reason of his belief that deadly force would be used against him, the essential elements of the defense (which the People must disprove) are as follows:

I. If the defendant reasonably believes

(a) that another person is using or is about to use deadly physical force against him, and

(b) that it is necessary for him to use deadly physical force to defend himself, then the defendant is justified in using deadly physical force against the other person, but only to the extent he reasonably believes necessary to defend himself; provided the defendant did not have a duty to retreat instead of using deadly physical force in his defense.

II. The defendant has a duty to retreat if

---

[41]/    See also, e.g., People v. Wesley, 76 N.Y.2d at 559, 561 N.Y.S.2d at 710 ("Evidence of a defendant's 'circumstances' includes relevant knowledge that the defendant may have had about the victim . . . and any prior experiences that the defendant may have had . . . "); People v. Miller, 39 N.Y.2d 543, 551, 553-54, 384 N.Y.S.2d 741, 747, 748 (1976) ("a defendant in a criminal case, where justification is an issue, [must be permitted] to introduce evidence of the victim's prior specific acts of violence of which the defendant had knowledge"); People v. Hagi, 169 A.D.2d at 210, 572 N.Y.S.2d at 667-68; People v. Powell, 168 A.D.2d 393, 394, 563 N.Y.S.2d 402, 402-03 (1st Dep't 1990), appeal denied, 78 N.Y.2d 972, 574 N.Y.S.2d 952 (1991); People v. Rivera, 138 A.D.2d 169, 174, 530 N.Y.S.2d 802, 805 (1st Dep't) ("[A] determination of reasonableness must be based on the circumstances facing a defendant and his situation. Those circumstances include any relevant knowledge the defendant had about the potential assailant and any prior experiences defendant had which could provide a reasonable basis for his belief that the other person intended to use deadly physical force."), appeal denied, 72 N.Y.2d 923, 532 N.Y.S.2d 857 (1988).

(a) he knows he can retreat with complete safety as to himself and others, and

(b) he reasonably believes the other person's use of deadly physical force against him is either actually occurring or is imminent.

<u>Davis</u> v. <u>Strack</u>, 270 F.3d at 125-26 (fn. omitted).

## C.    **Application of the Standard to Rivera's Case**

To successfully demonstrate a justification defense, Rivera would need to show that he reasonably believed it was necessary to shoot in order to defend himself and that there was no way he could retreat with complete personal safety.  Rivera has not shown such evidence.  The evidence clearly showed that Milan was unarmed when he encountered Rivera in the bodega.  (<u>See</u> pages 2-3 above.)  Regardless of whom Rivera thought Milan might be based on the leather jacket Milan was wearing, there is no evidence that Milan was using or was about to use deadly force on Rivera.  (<u>See</u> pages 3, 6 above.)  Rivera had no reason to use deadly force against Milan inside the bodega, and certainly no justification for pursuing and shooting Milan outside the bodega as Milan ran away.  (<u>See</u> page 3 above.)  Because Rivera's evidence about a prior incident would not have supported a justification defense, his trial counsel was not ineffective.  Accordingly, granting Rivera's motion to amend his petition to add an unexhausted ineffective assistance of counsel claim would be futile.[42]

Rivera's motion to amend his petition should be <u>DENIED</u>.

_____

[42]    The Court notes that Justice Torres denied Rivera's second C.P.L. § 440 motion on the ground that Rivera knew the facts supporting the motion at the time of his first C.P.L. § 440 motion and thus could have brought the claim in his first motion.  (<u>See</u> page 12 above.)  This is a state procedural bar that constitutes an independent state ground.  If the First Department were to affirm on that basis, Rivra's ineffective assistance claim would be barred from federal habeas review by adequate and independent state grounds.

## CONCLUSION

For the reasons set forth above, Rivera's habeas petition should be <u>DENIED</u> in its entirety, Rivera's motion to amend his habeas petition should be <u>DENIED</u>, and a certificate of appealability should not be issued.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. <u>See also</u> Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman, 500 Pearl Street, Room 650, and to my chambers, 500 Pearl Street, Room 1370.  Any requests for an extension of time for filing objections must be directed to Judge Berman (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal.  <u>Thomas</u> v. <u>Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985); <u>IUE AFL-CIO Pension Fund</u> v. <u>Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993), <u>cert. denied</u>, 513 U.S. 822, 115 S. Ct. 86 (1994); <u>Roldan</u> v. <u>Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Frank</u> v. <u>Johnson</u>, 968 F.2d 298, 300 (2d Cir.), <u>cert. denied</u>, 506 U.S. 1038, 113 S. Ct. 825 (1992); <u>Small</u> v. <u>Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989); <u>Wesolek</u> v. <u>Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir. 1988);

McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:       New York, New York
             September 18, 2007

                                          Respectfully submitted,

                                          _____
                                          **Andrew J. Peck**
                                          United States Magistrate Judge


Copies to:   Miguel Rivera
             Peter D. Coddington, Esq.
             Jennifer Marinaccio, Esq.
             Judge Richard M. Berman

H:\OPIN\RIVERAvERCOLE